Frederick W. Proctor, Jr., Patricia Proctor Mason, Joseph
Leidy and Phyllis Palsgrove, Plaintiffs v. Charles Douglas
Woodhouse et al, Defendants

[ 241 A.2d 785 ]

December Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 6, 1968

*Paterson, Gibson & Noble* for Frederick W. Proctor, Jr., Patricia Proctor Mason, Joseph Leidy and Phyllis Palsgrove.

*William E. Mikell, Esq.,* guardian ad litem of 'born and unborn issue of F. W. Proctor, Jr., Patricia P. Mason, Joseph Leidy and Phyllis Palgrove.

*Gravel, Bing & Shea* for Farmers Trust Company.

*Francis D. Foley, Esq.,* and *Joseph C. McNeil, Esq.,* for all other defendants in cause.

*John J. Deschenes, Esq.,* guardian ad litem of any unborn issue of Charles Douglas Woodhouse and Muriel Jeffrey Woodhouse and their issue.

**Holden, C.J.** This appeal concerns the construction of a .trust agreement. On June 20, 1930, Lorenzo Easton Woodhouse and his· wife Mary L. Woodhouse, referred to as the Donors, established a trust, naming the Farmers Trust Company of Burlington, Vermont, trustee. At the time the trust was created the donors had two children, Marjorie Woodhouse Leidy and the defendant, · Charles Douglas Woodhouse.

The plaintiffs are the children of Marjorie. By way of this action in equity under the Declaratory Judgment Act, they challenge the power of their grandmother, Mary L. Woodhouse, as surviving donor of the trust, to amend the · trust agreement to defeat the beneficial interest designated for them in the original instrument. The chancellor heard the cause and filed findings of fact. From a decree dismissing the complaint, the plaintiffs appeal.

The trust indenture recites:

"The Donors have granted, bargained, sold and delivered and by these presents do grant, bargain, sell and deliver to said Trustee the securities and property listed on schedule marked 'A' annexed hereto, the receipt of which is hereby acknowledged by the Trustee.

TO HAVE AND TO HOLD, the said securities and property to the said Trustee, its successors and assigns upon the following express trust and conditions, and with the powers and limitations hereinafter conferred and set forth, that is to say: * * *."

Succeeding paragraphs of the instrument direct the trustee to invest the principal and pay the net income to the donors during their respective lives. After the death of the surviving donor, provision is made for the payment of one-half the income to their son Charles and one-half to their daughter Marjorie during their lives. In the event of the death of either Charles or Marjorie during the lifetime of the other, it was provided that the share of the deceased son or daughter in the income should be paid to the issue of the deceased child. At the death of both children, the trustee was directed to retain the trust for twenty-one years and pay the net income in equal shares to the children of Charles and Marjorie by representation. The remainder of principal and accumulated income was to be similarly distributed at the expiration of the period prescribed.

The agreement continues:

7. It is the intention of the Donors that successive generations shall share in the distribution of the income and principal of this estate by right of representation through their deceased parents.

8. The Donors and the survivor of them reserve the right to add to the trust fund herein created from time to time and such additions, whether cash, securities or unused income, may be evidenced by additional schedules annexed hereto and shall be governed by the terms of this agreement from the time such additions are made.

The trustee was authorized to expend any part of the trust estate if, in its opinion, the welfare of the person who is at that time the beneficiary of the trust, requires such expenditure. The intent of this provision is expressed to provide a safeguard against unforseen disaster that might befall any of the beneficiaries. The authority was confided to the sole discretion of the trustee and "not a right subject to exercise by any beneficiary." The agreement also contains a spendthift provision, restraining each and every beneficiary from transferring or alienating his or her interest in the trust.

The trust agreement, as to this provision, specifies that the beneficial interests provided under the trust shall be paid solely and exclusively to the above designated beneficiaries "at the time entitled to take the same under the terms of this trust, * * *." From this point, the text of the agreement goes on to provide for the power to revoke and modify:

The Donors and the survivor of them hereby expressly reserve and retain the right at any time by notice in writing signed by them, or by the survivor in case of the death of either of them, and filed with the Trustee, to revoke, cancel and annul this indenture and the trust hereby created in whole or in part and to resume possession of the property subject to the trust free and discharged from this indenture and the trust created hereby and said Donors and the survivor of them also reserve and retain the right at any time and from time to time by a notice in writing signed by them or the survivor of them and filed with the Trustee, to alter, amend and modify this agreement in any and every respect, except that compensation or liability or responsibility of the Trustee shall not be changed without the consent of the said Trustee.

During the month following its execution, Lorenzo and Mary Woodhouse tranferred additional securities to the trust and amended the trust agreement. The amendment provided that in the event of the death of either Charles or Marjorie, without issue, leaving the other surviving, the survivor was to receive all the income of the trust estate during his or her lifetime.

On July 9, 1932, Mary Woodhouse, acting alone, made a further addition to the trust of approximately $250,000. By the same instrument, Mrs. Woodhouse created two savings accounts of $5,000 each, to be used for educational expense of the plaintiff Frederick W. Proctor and Patricia Proctor (Mason). By an instrument titled "Partial Revocation," Mary, again acting alone, directed the withdrawal of these accounts and added them to the trust fund. Marjorie Woodhouse Leidy deceased in 1933. Her father Lorenzo Easton Woodhouse died on January 23, 1935.

On February 25, following her husband's decease, Mary Woodhouse undertook to further amend the trust agreement as the surviving donor. The amendment directed the trustee, on her death, to pay to each of Marjorie's children the sum of twelve hundred dollars every year during the term of the trust. The remainder of the annual income was directed to be paid, at the death of the surviving donor, to Charles or his children in the event of his prior decease.

In April 1935, Mary contributed additional funds to the trust estate. She also provided for certain dispositions to charities upon her death.

A subsequent amendment, dated November 23, 1936, undertaken by Mrs. Woodhouse, substantially alters the disposition of the remainder of the trust estate. This instrument refers to the original trust agreement and the power of modification granted to her, as surviving donor. It directs—"At the termination of this trust, the principal of said trust fund, and any accumulated income thereon, shall be paid over and delivered in equal shares to the issue of said Charles Douglas Woodhouse *per stirpes.*" If Charles should die without issue, provision is made for extending the trust for the benefit of Charles' widow and the children of Marjorie E. Leidy, with the remainder to the issue of Marjorie's children.

By this amendment, the right of Marjorie's issue to share in the remainder of the trust estate was made contingent upon Charles' death without issue. The amendment instrument also specified that "(T)his trust agreement is irrevocable on the part of the Surviving Donor. * * *"

Despite this provision, Mrs. Woodhouse undertook further amendments in 1939 and 1955, affecting the disposition of income from the trust.

Mary L. Woodhouse deceased December 1, 1961, at the age of 96. Her son Charles Douglas Woodhouse survived her.

The plaintiffs' challenge to amendments by Mary Woodhouse, as surviving donor, is based on the premise that Lorenzo Woodhouse contributed to the fund which constituted the original trust estate. To this end, they introduced in evidence, over the defendants' objection, the federal estate tax return filed by the defendant Farmers Trust Company for the estate of Lorenzo Woodhouse. In answer to the question posed by the taxing authority—"Were there in existence at the time of the decedent's death any trust created by him during his lifetime?"—the defendant trustee responded by listing assets totalling $2,242,262.80.

The plaintiffs also introduced in evidence certain allegations contained in a petition, relating to the trust, to the Tax Court of the United States. The petition was on the oath of the defendant Farmers Trust Company and David Yoakley, as coguardians of the property of Mary Woodhouse. The petition alleged—"All of the original assets of the trust were contributed to by Lorenzo Easton Woodhouse and, prior to his death in 1935, he made certain additions to the trust."

This evidence was presented in support of the contention that the power of each donor to amend the trust agreement was restricted to the amount of his or her contribution to the trust estate. The chancellor reported that he was not persuaded by this evidence that Lorenzo Easton Woodhouse was the sole owner of the property which made up the original trust estate—contrary to the unequivocal declarations in the trust indenture that the property was donated and delivered by both donors. He found accordingly.

The plaintiffs' first claim of error attacks this finding as unsupported by the evidence. They request this Court to reverse this determination and supply a finding to confirm Lorenzo's sole ownership of the property in the original trust.

■■ We see no occasion to reject the lower court's findings on this issue. It was the plaintiffs' burden to establish their claim that Lorenzo was the sole donor of the trust estate. Without regard to the admissibility of the plaintiffs' evidence on this question, the chancellor was amply justified in affording greater weight to the plain import of the trust indenture that Lorenzo and Mary Woodhouse together granted and created the trust estate. This was the solemn declaration of the authors of the trust indenture. We take it that it was intentionally done to form a part of a structure of their own design.

It is undisputed that on the death of the surviving donor, the trust assets were derived from property of both Lorenzo and Mary Woodhouse. In this aspect of the trust, we are not concerned with the tax consequences nor with the allocation of the assets had the power of revocation been exercised with a resumption of possession during the lifetime of the donors. Compare, *Colonial Trust Co.* v. *Commissioner of Internal Revenue,* 111 F.2d 740, 741.

The central theme of the plaintiffs' appeal is to the effect that the power to amend the trust agreement, residing in each donor, extends only to the property which the particular donor contributed to the trust estate. They urge this construction is required by the use of the words "reserve and retain" in describing the power to amend. With equal emphasis, they refer to the words "resume possession" in relation to the power of revocation.

■ The original indenture comtemplates additions to the corpus, by either or both donors, during the life of the trust. In the pattern in which the estate was constituted and accumulated, the language by

154

which the power was created is not entitled to precise technical construction. There is also reference in the habendum to "powers—conferred." In this combination, the use of the words—"reserve and retain" and "resume possession," impose no limitation on the donors' powers conferred in their agreement.

■■ The dominant factor is the intention of the parties. *Nelson* v. *Bacon,* 113 Vt. 161, 169, 32 A.2d 140. Particular words will not be lifted out of context to convey an intention repugnant to the main structure and design of the instrument. Courts are called upon to construe the instrument in its entirety in searching for the true intent of its authors. *In re Lull Estate,* 120 Vt. 195, 198, 138 A.2d 615; *Tuttle* v. *Tuttle,* 112 Vt. 271, 278, 23 A.2d 523.

Without regard to the extent of the respective contributions of the joint donors, the trust agreement affords Lorenzo and Mary Woodhouse equal footing. They are both to receive the net income from the trust during their lives together. And during their concurrent lifetimes the power to change or cancel the arrangement was required to be exercised in concert, with full authority confided in whichever donor should survive. As to the donors, the plan is entirely reciprocal.

■ In creating a trust, the settlor can reserve to himself, or grant to another, the power to revoke or amend the agreement as to the property interests of the various beneficiaries at such times and on the conditions he directs. *Avery* v. *Bender,* 119 Vt. 313, 331, 126 A.2d 99; Restatement, Trusts 2d §37; Bogert, Trusts and Trustees, §993 (2d Ed.). In the Woodhouse trust, Lorenzo and Mary undertook, by way of a joint agreement, what either could have done by his or her separate indenture. The fact that they created the trust in concert attests the mutuality of their design, not only as to the power conferred, but their common interest and confidence in each other as to the disposition of the proceeds.

It is clear that at the time the trust was created, both donors shared in the intention that successive generations of the family should share in the distribution of income and principal at the termination of the life estates prescribed. But this preliminary design was tentative only. As with all other terms of the agreement, save for compensation and responsibility of the trustee, their intentions and provisions in

this respect were subject to the overriding power in the donors, and the survivor of them, to revoke and modify "at any time."

In conferring this power, Lorenzo, and his wife alike, destroyed the certain consequences which otherwise might attach to the favorable provision made for the plaintiffs in the original agreement. It was the donors' choice to elect between certainty and flexibility. Between these competing considerations, the presence of the power itself announces the combined choice of the settlors on this point. See Bogert, Trusts and Trustees, *supra,* §993.

█ The plaintiffs further contend that Mary Woodhouse was bound by the spendthrift provisions of the trust agreement which restrained each and every beneficiary from the transfer of his or her beneficial interest in the estate. They stress that Mrs. Woodhouse was not excepted from this restriction. From this, they argue she was without power to transfer any interest she had in the trust except to the extent of her minor contribution.

The purpose of this aspect of the trust is to secure the beneficiaries against his or her improvidence. To say that either or both donors, as life tenants, intended to include themselves or each other in the operation of this restriction is inconsistent with the power that each reserved and granted to the other.

As to them, the spendthrift provision has no application. Like the other terms of the trusts, it was subject to modification or recision at their discretion.

Insofar as the donors were joint or surviving beneficiaries of the trust income, they are not affected by the restraint. "If a person attempts to create a spendthrift trust for his own benefit, he may voluntarily transfer his interest although the terms of the trust contain an express provision against voluntary alienation." Restatement, Trust 2d §156. Comment g. Such is the prevailing authority. *Merchants National Bank* v. *Morrissey,* 329 Mass. 601, 109 N.E.2d 821, 823.

█ Lastly, the plaintiffs maintain that the power vested in Mary was held in trust and could only be exercised to give effect to the general intention of Lorenzo, as expressed in the seventh paragraph of the trust agreement. The instrument does not lend itself to this construction. Where the power is conferred on one, who is also a beneficiary, there is a presumption that it was conferred for the

beneficiary's own benefit. See Restatement, Trust 2d §185; Scott, Trusts §185 (3rd Ed.).

Here we are dealing with a beneficiary who was also a co-settlor. At the time the trust was established, her donor had coextensive power and benefit. To construe the power as one held strictly in trust, to carry out the original provisions made for successive generations, would be to abrogate the power itself. The plain intention of the instrument opposes this consequence.

It does not appear, as the plaintiffs and their authorities suggest, that Mrs. Woodhouse exercised the power for her own benefit, although perhaps she might have done so through the power of revocation. She amended the trust to prefer the son's children if they survive the plaintiffs.

To be sure, this might well produce a result unfavorable to them, contrary to the tentative purpose of both donors when they created the trust. But such is the nature and capability of the power conferred. Although it produces an unequal result in successive generations, this is a consequence which both donors must be deemed to have contemplated, as parents, in bestowing upon the survivor full power of amendment, as changing time and factors might dictate.

To the extent that the order appealed from denies the declaratory relief prayed for by the plaintiffs, to the effect that Mary Woodhouse had no power to amend the trust and to declare the plaintiffs have a present interest in the trust according to the original trust agreement dated June 20, 1930, the decree is affirmed. However, the defendant trustee and several of the principal beneficiaries have requested declaratory relief in confirmation of the amendments to the original trust agreement; yet no declarations are made in the decree. To the extent the findings support the defendants' request for declaratory relief, their petitions should have been adjudged and declared in the decree, as provided in 12 V.S.A. §4714.

*The order dismissing the plaintiffs' complaint is affirmed. The cause is remanded for the entry of a new declaratory decree in accordance with the views expressed in the opinion.*