792 So.2d 695 (2001)
Paul ROLLINS and Thomas Rollins, Appellants,
v.
Jose L. ALVAREZ, etc., et al., Appellees.
No. 5D00-1369.
District Court of Appeal of Florida, Fifth District.
August 31, 2001.
*696 Jonathan D. Kaney, Jr. and Jonathan D. Kaney III of Cobb, Cole & Bell, Daytona Beach, for Appellants.
Jennifer Eden Railey of Moran & Shams, P.A., Orlando, and Jeffrey M. Koltun of Kane and Koltun, Maitland, for Appellees.
SHARP, W., J.
The trial court disposed of this declaratory judgment case by final summary judgment. Based on the unambiguous language of an amended and restated trust executed in 1998, and other trust amendments and documents in the record, the court concluded that the appellees, Helen Carr and Janet Condello, are the persons entitled to receive the remainder of the trust after the deaths of Alleen and Jose Alvarez (the income beneficiaries). It further concluded that the appellants, Thomas Rollins and Paul Rollins (sons of Alleen Alvarez), are not entitled to receive any distribution from the trust.
A summary judgment based on a review of documents, such as in this case, is reviewable by an appellate court de novo.[1] After doing so, we are unable to conclude that Helen Carr and Janet Condello are, as a matter of law, entitled to receive final distribution of the trust proceeds; thus we remand this cause for further consideration.
The record establishes that in 1993, Alleen and Jose Alvarez created an inter vivos trust, entitled "The Jose L. Alvarez and Alleen W. Alvarez Trust Agreement," into which they placed most of their marital property.[2] The purpose of the trust was to provide a vehicle to care for them in their old age and infirmity, and to avoid probate and guardianships. Alleen was at that time suffering from early dementia. Jose was named sole trustee with power to distribute income and principal to both of them during their lifetimes. After the death of both of them, Alleen's two sons, Thomas and Paul Rollins, were to receive the balance.
Under this trust agreement, Jose was designated as the "Settlor" of the trust. Obviously he was not the sole settlor, since under generally accepted trust law, all persons who contribute property to a trust res are deemed to be settlors or trustors or grantors.[3] However, the significance of the express designation in this 1993 trust instrument of Jose as "Settlor" was to *697 grant solely to him the power to amend, modify or revoke the trust during his lifetime. By an amendment dated August 2, 1994, Jose exercised this power to change the designation of the successor trustees, and to reduce the share to be given to Alleen's sons to 50%, and to give the other 50% to Helen Carr and Richard Carr.
On May 10, 1996, Jose executed a document entitled the "Second Amendment to the Jose L. Alvarez, and Alleen W. Alvarez Revocable Living Trust, dated September 2, 1993." He amended the 1993 trust in a very significant way. He named both himself and his wife, Alleen, as trustmakers, settlors and grantors, and he altered his sole power to amend or revoke the trust, by requiring both his and Alleen's joint action.[4] This trust provided:
We shall have the absolute right to amend or revoke our trust, in whole or in part, at any time. Any amendment or revocation must be in writing, signed by both of us, and delivered to our Trustee.

This right to amend or revoke is personal to us and may not be exercised by a legal representative of either of us. After the death of one of us, this agreement shall not be subject to amendment or revocation. (emphasis added)
Under this 1996 trust, Jose and Alleen continued to be the discretionary principal and income beneficiaries, with many elaborate powers vested in the Trustee to care for them in time of their respective disabilities and death, to handle a myriad of business transactions, and to deal with all kinds of properties, including community property. At the death of the first trustmaker, the balance of the trust continued to be administered for the survivor's benefit, with discretionary principal and income distributions for the survivor's well being and care. The surviving trustmaker also was given a general power of appointment over the trust residue, exercisable by a valid last will and testament or by a valid living trust. The document provides: "In exercising this general power of appointment, the surviving Trustmaker shall specifically refer to this power." (emphasis added)
Article nine of the 1996 trust provides that if no action is taken to exercise the general power of appointment, or no amendment is made to designate an ultimate taker of the trust res, the balance is to go to "the surviving descendants of the Successor Trustee's, per stirpes." (emphasis added) Although Jose is expressly named as the trustee under this document, no one is expressly named as the "Successor Trustee." Helen Carr is named in Article 11 as a "Disability Trustee" for Jose, and the "Death Trustee" upon the death of Jose. Richard and Helen Carr are named as death Trustees for Alleen, if Jose has died or is disabled.
In February 1998, Jose executed a document entitled "Amended and Restated Jose L. Alvarez and Alleen W. Alvarez Trust." It purports to amend and restate the original trust executed in 1993 and as amended in 1994. No mention, however, is made of the 1996 trust, and the 1998 document was executed only by Jose as Settlor and Trustee.
In the 1998 document, Helen Carr is named as the Alternate Trustee, and Richard Carr as a back-up trustee in the event she could not so serve. It made Jose the sole income and principal beneficiary during his lifetime. Alleen was so designated for her lifetime following Jose's death. On the death of Jose, after Alleen's death, *698 Janet Condello was given a specific bequest and the residuary of the trust was to be distributed one-half to Helen Carr and one-half to Janet Condello. There is also an express provision that Jose intentionally excluded Alleen's two sons from receiving any of the trust res.
In June of 1998, an amendment was made to the 1998 trust, which provided more specifically for the care of Alleen and repeated that no assets were to be distributed to Alleen's sons. This document was executed solely by Jose.
On June 30, 1998, Jose executed a document by which he formally resigned as trustee of the 1998 trust due to health problems and named Helen Carr as his Successor Trustee. Alleen Alvarez died on July 24, 1998 and two days later, Jose died.
Prior to his death, Jose filed a petition for a declaratory judgment, seeking clarification of the trust provisions and identity of the beneficiaries. He named as respondents, Alleen and others. After Jose's death, Helen Carr was substituted as petitioner and she amended the petition to add Alleen's sons as respondents. She sought a declaration "that Janet Condello and Helen M. Carr are the remaining beneficiaries of the Trust." The Rollins brothers filed an answer and counter-petition, asserting that Jose lacked the power to change the beneficiaries of the 1993 trust, and that they were the sole beneficiaries.
Both sides moved for summary judgment on the ground that the documents are clear and unambiguous, and there are no material issues of fact. The court ruled that Jose's power to amend or revoke the 1993 trust was valid, that it was not held in trust as argued by the Rollins brothers, and that it had been properly exercised pursuant to the 1998 document to name Janet Condello and Helen Carr as the sole beneficiaries of the residue of the trust.
We would agree with the analysis of the trial court if only the 1993 and 1998 documents had been executed. There is nothing in well-established trust law that makes the retaining (by the settlor or grantor) or the giving (to another person) of a power to amend, revoke or modify an inter vivos trust, invalid or unlawful.[5]
In order to circumscribe such a power by imposing the giving of it with fiduciary duties or to make them invalid because the beneficiaries are too indefinite, special language in documents themselves or special factsneither of which are present in this casewould have to be established.[6] Similarly, a person can be given or retain a general power of appointment over a trust res, exercisable with no limitations.[7] The only limitations on such powers to amend and revoke or to appoint are that they be exercised at the time and in the manner provided for in the instrument creating the power in the first place.[8]
*699 That is why the 1996 trust creates the difficulty here. Jose had the power under the 1993 trust to amend and revoke the inter vivos trust as he wished, by simply executing a new trust or a document and filing it with the trustee; i.e., himself. This he apparently did via the 1996 trust. However, by that document, he then limited his powers to revoke or amend that trust as quoted above. Any amendment or modification of the 1996 trust had to be accomplished by a written document signed by both himself and Alleen, during their joint lifetimes. See In re Guardianship of Medley, 573 So.2d 892 (Fla. 2d DCA 1991); Procter v. Woodhouse, 127 Vt. 148, 241 A.2d 785 (1968). Alleen never executed a subsequent amendment. In addition, the 1996 trust gave Jose a general power of appointment by a will or trust. However, to exercise it, the 1996 document required that Jose specifically refer to the power. The record is silent on whether he ever properly exercised the general power of appointment.
Thus, based on the record before the court, it appears that the 1996 trust was never revoked or amended and it continued in effect until the joint deaths of Jose and Alleen, becoming irrevocable upon the death of Alleen.[9] No doubt counsel who prepared the 1998 trust would have also attempted to revoke and amend the 1996 trust as they did the 1993 trust, had they been aware of its existence.[10] The drafter carefully mentions the 1993 trust and the 1994 amendment, but does not deal with the 1996 trust. Perhaps the 1996 trust was properly terminated or amended, so that the 1998 trust is the effective instrument, but that is not clear from this record.
Further, if the 1996 trust is the effective instrument, it is also not clear from this record who are the ultimate beneficiaries of the trust. The instrument does not identify such person or persons, mentioning only that if no ultimate beneficiaries are named that "the surviving descendants of the Successor Trustee's, per stirpes" shall take the residue. But as pointed out above, the identity of the successor trustee is not clear under this document and the existence or identity of the successor trustee's surviving descendants is not clear either. Finally, if no such person exists, the court would have to resort to the law of intestate succession to answer the questions posed by this litigation.
Because of these material facts and unanswered questions, we remand this cause to the circuit court for further proceedings.
REVERSED and REMANDED.
GRIFFIN and SAWAYA, JJ., concur.
NOTES
[1] Edwards v. Norman, 780 So.2d 162 (Fla. 2d DCA 2001); Krol v. City of Orlando, 778 So.2d 490 (Fla. 5th DCA 2001); Sierra v. Shevin, 767 So.2d 524 (Fla. 3d DCA 2000).
[2] There is no dispute that the effect of this transfer to the trustee destroyed any tenancy by the entireties that may have existed in the property pre-transfer. See Hunt v. Covington, 145 Fla. 706, 200 So. 76 (1941); 12 Fla. Jur.2d Cotenancy and Partition § 29 (1998).
[3] 76 Am.Jur.2d Trusts § 2 (1992).
[4] If Alleen had become incompetent when Jose executed the 1996 trust, this amendment was a grave error.
[5] See Avery v. Bender, 119 Vt. 313, 126 A.2d 99 (1956); Procter v. Woodhouse, 127 Vt. 148, 241 A.2d 785 (1968); Robbins v. Hunyady, 498 So.2d 955 (Fla. 2d DCA), rev. denied, 500 So.2d 544 (Fla.1986). See also § 689.075(1)(a), Fla. Stat.; G. Bogert, The Law of Trusts and Trustees § 993 (rev.2d ed.1983); Restatement (Second) of Trusts §§ 37; 125; 76 Am.Jur.2d Trusts §§ 30; 32.
[6] See Northern Trust Co. v. Tarre, 86 Ill.2d 441, 56 Ill.Dec. 671, 427 N.E.2d 1217 (1981). Kunce v. Robinson, 469 So.2d 874 (Fla. 3d DCA 1985) is distinguishable from this case.
[7] 62 Am.Jur.2d Powers of Appointment and Alienation § 2 (1990). See First Interstate Bank of Washington v. Lindberg, 49 Wash. App. 788, 746 P.2d 333 (1987); In re Woodward's Trust, 284 A.D. 459, 132 N.Y.S.2d 266 (1954).
[8] 76 Am. Jr.2d, Trusts §§ 91; 92; 97. See MacFarlane v. First National Bank of Miami, 203 So.2d 57 (Fla. 3d DCA 1967).
[9] See L'Argent v. Barnett Bank, N.A., 730 So.2d 395 (Fla. 2d DCA 1999).
[10] The 1996 trust was prepared by a different law firm, in a different city than the 1998 trust.