920 So.2d 193 (2006)
Annmary K. ROBERTS, Individually and as Successor Trustee of the Trust Agreement of John J. McNeill and Louise M. McNeill, Appellant,
v.
Kimberly A. SARROS and Michael P. McNeill, Appellees.
No. 2D04-5578.
District Court of Appeal of Florida, Second District.
February 15, 2006.
Richard L. Pearse, Jr. of Richard L. Pearse, Jr., P.A., Clearwater, for Appellant.
Terry L. Hirsch of Englander & Fisher, P.A., St. Petersburg, for Appellees.
SILBERMAN, Judge.
Annmary K. Roberts, individually and as successor trustee, appeals a partial final summary judgment determining that a trust amendment is invalid and that the trust shall be distributed pursuant to the terms of the original trust agreement. We reverse and remand for further proceedings.
On May 4, 1989, John J. McNeill and Louise M. McNeill, husband and wife (the McNeills), executed the Trust Agreement *194 of John J. McNeill and Louise M. McNeill (the Trust). At that time, the McNeills had two children, Patrick J. McNeill and Appellant Annmary K. Roberts. Appellees Kimberly A. Sarros and Michael P. McNeill are the grandchildren of the McNeills and the children of Patrick J. McNeill.
The Trust designated the McNeills as "the Grantors" and "the Trustees." With respect to the disposition of the Trust assets and income during the McNeills' lifetime, Article I of the Trust provides, in pertinent part, as follows:

GRANTORS' LIFE INTEREST: The Trustees shall pay the entire net proceeds from the income of the Trust Fund to or for the benefit of the Grantors in monthly or other convenient installments for so long as they may live. In addition thereto the Trustees shall make payments from the principal of the Trust Fund to or for the benefit of the Grantors in such sums and at such times as the Grantors may request from time to time.
Article II provides as follows for the distribution of the Trust property after the McNeills' deaths:

DISTRIBUTION: Upon the death of the last remaining Grantor the Trustee shall distribute the property remaining in the trust estate as follows:
A. Fifty percent (50%) to PATRICK J. McNEILL, and if he is not living, then to his issue, per stirpes.
B. Fifty percent (50%) to ANNMARY K. ROBERTS, and if she is not living, then to her issue, per stirpes.
Article XV of the Trust provides, "AMENDMENT AND REVOCATION:
This Trust is subject to revocation, change or amendment, in writing, by the Grantors from time to time." Article XII contains rules of construction for the Trust instrument, including the following provision that is pertinent to this appeal: "Unless the context required [sic] otherwise, masculine personal pronouns include the feminine, and the singular and plural may be construed interchangeably."
On August 6, 1999, Patrick J. McNeill died. Pursuant to the terms of the Trust, Patrick J. McNeill's contingent interest in the Trust passed in equal shares to his children, the Appellees. On January 13, 2002, John J. McNeill died. Annmary K. Roberts accepted appointment as the successor trustee with the consent of Louise M. McNeill on February 25, 2002. On March 6, 2002, Louise M. McNeill executed an Amendment to Trust Agreement (the Amendment). The Amendment changed the distribution provisions of Article II to eliminate Patrick J. McNeill's children as beneficiaries and to provide that the entire "net income and principal of the resulting Trust Estate" were to be distributed to the McNeill's daughter, Annmary K. Roberts. The Amendment also changed the provision concerning the succession of trustees. Louise M. McNeill died on December 11, 2002.
On December 10, 2003, the Appellees filed an action for declaratory judgment and sought in count I a declaration that the Amendment was invalid and that the Trust should be administered and distributed in accordance with its original terms. Upon the Appellees' motion for summary judgment as to count I, the trial court granted the motion and entered an order ruling that the Amendment was invalid and that the Trust was to be administered and distributed in accordance with the Trust terms, with fifty percent to the Appellees and fifty percent to Annmary K. Roberts.
Our standard of review of a trial court's ruling on a motion for summary judgment regarding a pure question of law is de *195 novo. Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001); Thomas v. Smith, 882 So.2d 1037, 1043 (Fla. 2d DCA 2004). Here, the trial court construed Article XV of the Trust and stated in its order, "Since the Trust provided that it could be revoked or amended only by the actions of the Grantors, it became irrevocable upon the death of Grantor John J. McNeil [sic] and could not be amended or revoked solely by Grantor Louise M. McNeil [sic]." In its order, the trial court did not mention the provision in Article XII that allows for the singular and plural to be construed interchangeably, unless the context requires otherwise.
The Appellees contended, and the trial court agreed, that the use of the plural form "Grantors" instead of "Grantor" or "Grantor(s)" in Article XV required that both Grantors sign any amendment to the Trust and that after the first Grantor's death the Trust became irrevocable and no longer subject to amendment. Because the Trust contains the provision in Article XII allowing for the singular and plural forms to be used interchangeably, unless the context requires otherwise, we cannot agree with the Appellees' contention and the trial court's decision.
This court has recognized that "[t]he polestar of trust interpretation is the settlors' intent." L'Argent v. Barnett Bank, N.A., 730 So.2d 395, 397 (Fla. 2d DCA 1999). If the trust language is unambiguous, the settlors' intent as expressed in the trust controls and the court cannot resort to extrinsic evidence. Id.; Ludwig v. AmSouth Bank of Fla., 686 So.2d 1373, 1376 (Fla. 2d DCA 1997). In determining the settlors' intent, the court should not "resort to isolated words and phrases"; instead, the court should construe "the instrument as a whole," taking into account the general dispositional scheme. Pounds v. Pounds, 703 So.2d 487, 488 (Fla. 5th DCA 1997); see also L'Argent, 730 So.2d at 397.
In L'Argent, this court explained that "a valid trust cannot be altered, amended, or revoked except by the exercise of a power identified in the trust." L'Argent, 730 So.2d at 396. The Appellees rely upon L'Argent to support their position that Article XV of the Trust did not allow the surviving Grantor to amend the Trust after the first Grantor's death. In L'Argent, the appellant's parents had settled a trust providing "that during `the life of the Settlors, this trust may be amended, altered, revoked, or terminated, in whole or in part, or any provision hereof, by an instrument in writing signed by the Settlors and delivered to the trustees.'" Id. at 396. This court held that the unambiguous language of the trust, which was consistent with the settlors' dispositional scheme, mandated "that the power to amend the trust be exercised while both settlors were living." Id. at 396-97. Thus, this court determined that amendments that the surviving settlor made after the first settlor died were invalid. Id. at 397. Notably absent in L'Argent, however, is any mention of a "singular/plural clause" in the L'Argents' trust.
We note that none of the cases that the Appellees cite deal with a singular/plural clause and therefore are distinguishable. In addition to L'Argent, the Appellees also rely on Rollins v. Alvarez, 792 So.2d 695 (Fla. 5th DCA 2001). The provision at issue in Rollins, however, specifically stated that any amendment must be "signed by both of us" and that "[a]fter the death of one of us, this agreement shall not be subject to amendment or revocation." Id. at 697. Thus, neither L'Argent nor Rollins controls the result in this case.
Here, Article XV provides a power to revoke or modify the Trust. The provision *196 states, "This Trust is subject to revocation, change or amendment, in writing, by the Grantors from time to time." If the Trust did not contain the clause in Article XII allowing for the singular and plural forms of words to be construed interchangeably, we would agree with the Appellees that L'Argent would dictate that we affirm the trial court's ruling that the Amendment, made after the first Grantor's death, was invalid. However, based on rules of contract construction, "`no word or part of an agreement is to be treated as a redundancy or surplusage if any meaning, reasonable and consistent with other parts, can be given to it[.]'" Singer v. Singer, 706 So.2d 914, 915 (Fla. 4th DCA 1998) (quoting Royal Am. Realty, Inc. v. Bank of Palm Beach & Trust Co., 215 So.2d 336, 338 (Fla. 4th DCA 1968)); see also Fla. E. Coast Ry. Co. v. City of Miami, 76 Fla. 277, 79 So. 682, 683 (1918).
If any meaning is to be given to the singular/plural clause in the Trust, then the provision allowing the Grantors to amend from time to time would also allow the surviving Grantor to amend from time to time. We recognize that the provision in Article XII allowing for the singular and plural to be construed interchangeably contains a qualifier  unless the context requires otherwise. The context does not require that "Grantors" be construed to mean only the plural form of the word in Article XV. In contrast, the context would require only the plural meaning in those instances in which the Trust states "both Grantors." If Article XV had stated that "both Grantors" could amend the Trust from time to time, or that "both Grantors" must sign any amendment, then the context would require that the provision be construed in only the plural form. The Trust does contain the phrase "both Grantors" in two places, but not in Article XV.
Furthermore, in considering the trust instrument as a whole, it is clear that if the singular/plural clause were not applied, it would produce absurd results. Every reference in Article I is to the plural form "Grantors." Article I deals with the disposition of principal and income of the Trust to the Grantors during their lifetime. If the references to the "Grantors" were construed to mean only the plural form, then after the death of the first Grantor the surviving Grantor could no longer receive income from the Trust. Such a result is contrary to the stated purpose of the Trust, which is to provide for the McNeills "for so long as they may live." Article I also provides that "the Trustees shall make payments from the principal of the Trust Fund to or for the benefit of the Grantors in such sums and at such times as the Grantors may request from time to time." Again, if construed to mean only the plural "Grantors," then the surviving Grantor would have no access to the principal of the Trust even though the trust was established to provide proper care for the McNeills and to allow them to maintain "a style of living to which they have been accustomed."
Like Article I, Article XV must be construed in accordance with the singular/plural clause. This is consistent, as in Article I, with the overall plan that the Grantors retain control over their assets as long as either of them lived. Nothing in the context of Article XV requires that "Grantors" be construed to mean only the plural form. When construed to include the singular "Grantor," Louise M. McNeill, as the surviving Grantor, could amend the Trust pursuant to the power to revoke or amend contained in Article XV. Thus, we reverse the trial court's order granting summary judgment as to count I and determining that the Amendment by Louise M. McNeill *197 was invalid and remand for further proceedings on the Appellees' complaint.
Reversed and remanded.
ALTENBERND J., Concurs.
CASANUEVA, J., Concurs in result only.