JAYE DAY, Plaintiff v. PAUL RASMUSSEN, Defendant

No. COA05-1314

(Filed 6 June 2006)

**Trusts— intent of settlors—extrinsic evidence—distribution of assets**

Although the intent of the settlors of a trust as to the time of revocation could not be determined from the face of the document, an affidavit from the drafting attorney made it clear that their intent to was allow amendment or revocation by the surviving settlor, so that amendments changing the distribution of the trust assets after the death of one settlor were valid, and summary judgment was correctly granted for defendant in an action bringing conversion and other claims.

Appeal by plaintiff from an order entered 14 June 2005 by Judge James C. Spencer, Jr., in Wake County Superior Court. Heard in the Court of Appeals 20 April 2006.

*Randolph M. James, P.C., by Randolph M. James, for plaintiff appellant.*

*Maupin Taylor, P.A., by M. Keith Kapp and Kevin W. Benedict, for defendant appellee.*

McCULLOUGH, Judge.

Plaintiff appeals from the entry of an order granting defendants' motion for summary judgment where there was no genuine issue of material fact, and defendant was entitled to judgment as a matter of law. We affirm.

On 20 October 2004 plaintiff Jaye Day ("Day") filed actions in Wake County Superior Court against her brother defendant Paul Rasmussen ("Rasmussen") and Timothy A. Nordgren, as executor of her father's estate, alleging conversion, constructive trust, and tortious interference with a contract based on her father's trust agreement. Rasmussen filed an answer and motion on 28 December 2004 denying specific factual allegations and alleging that Day's complaint failed to state a claim upon which relief could be granted. Rasmussen subsequently filed a motion for summary judgment and an amended and renewed motion for summary judgment on 18 February 2005 and 11 April 2005, respectively. The undisputed facts are as follows:

On 19 August 1987 Ethel Rasmussen and Edmund Rasmussen entered into a trust agreement which provided that the purpose of the trust was to hold all assets owned by the trust for the lifetime of the settlors and after the death of both settlors was to be distributed to Day and Rasmussen as beneficiaries in equal shares, share and share alike, *per stirpes*. The agreement stated that the trust's assets may be used for the settlors' support, general welfare, education, and health for as long as they shall live and at their sole discretion. The 1987 trust agreement further reserved the right to revoke or change the trust agreement through the following provision: "Edmund A. Rasmussen and Ethel V. Rasmussen reserve the right to revoke, amend or make changes to this Trust Agreement at any point during their lifetimes." The trust agreement further stated that it was to be enforced under Florida laws, the state in which the trust agreement was entered into.

On 21 September 1988 Ethel Rasmussen passed away and Edmund Rasmussen subsequently moved from Florida to North Carolina. After Ethel Rasmussen's death, two amendments were made by the drafting attorney in Florida allowing discretionary distributions of income to

Edmund Rasmussen and appointing Paul Rasmussen and Day as co-trustees. On 30 March 2001 Edmund Rasmussen transferred the assets of the 1987 Trust and created a new trust agreement, the 2001 Trust. The revocable trust agreement entered into on 30 March 2001 altered the terms of distribution and in turn provided that Day would receive $50,000.00 after the settlor's death and after such distribution, the balance of the trust would go to Rasmussen. Subsequently, on 30 April 2001 Edmund Rasmussen made an amendment to the trust agreement which again altered the terms of distribution replacing Article V, paragraph (a) of the 2001 Trust agreement which provided Day $50,000.00 and in turn stated that Day shall receive $25,000.00. No other amendments were made to the 2001 Trust prior to the death of Edmund Rasmussen on 14 June 2002.

In support of Paul Rasmussen's motion for summary judgment, the affidavits of Thomas Gurran, drafter of the 1987 Trust, Timothy Nordgren, drafter of the 2001 Trust, and Paul Rasmussen were filed. Pursuant to the summary judgment hearing, the trial court determined that "although the language of the original 1987 trust document is ambiguous with respect to revocation and amendment, the undisputed extrinsic evidence, including the affidavit of the attorney who drafted the trust, demonstrates the intent of the settlors to allow the survivor to revoke or amend the trust after the death of the other, and therefore, the trust remained revocable and amendable after the death of one settlor." On 14 June 2005 the trial court entered an order granting summary judgment where it was determined that there were no genuine issues of material fact and Rasmussen was entitled to judgment as a matter of law.

Plaintiff now appeals.

Day contends on appeal that the trial court erred in granting Rasmussen's motion for summary judgment where there was a genuine issue of material fact which was an issue for determination by the jury.[1] We disagree.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen.

---

1. Plaintiff Day filed a companion case against Timothy A. Nordgren, as the executor of her father's estate, in which the facts and issues of law are identical. Therefore, the analysis and determination by the appellate court in this case, is also applicable and controlling in the companion case of *Day v. Nordgren.*

Stat. § 1A-1, Rule 56(c) (2005). On a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the non-moving party." *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 775 (1998). When determining whether the trial court properly ruled on a motion for summary judgment, this Court conducts a *de novo* review. *Va. Electric and Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986).

There is no genuine issue of material fact where a party demonstrates that the claimant cannot prove the existence of an essential element of his claim or cannot surmount an affirmative defense which would bar the claim. *Vares v. Vares*, 154 N.C. App. 83, 86, 571 S.E.2d 612, 615 (2002), *disc. review denied*, 357 N.C. 67, 579 S.E.2d 576 (2003). Day stated three claims of action in her complaint: conversion, constructive trust, and tortious interference with a contract.

"Conversion is defined as: (1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." *Di Frega v. Pugliese*, 164 N.C. App. 499, 509, 596 S.E.2d 456, 463 (2004). A constructive trust "arises when one obtains the legal title to property in violation of a duty he owes to another." *Fulp v. Fulp*, 264 N.C. 20, 22, 140 S.E.2d 708, 711 (1965). In order to establish a *prima facie* case for tortious interference with a contract, one must prove " '(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.' " *Beck v. City of Durham*, 154 N.C. App. 221, 232, 573 S.E.2d 183, 191 (2002). Each of these claims is based on the contention that the unilateral revocation, alteration or amendment of the 1987 Trust, after the death of Ethel Rasmussen, was invalid as contrary to Florida law.

At the summary judgment hearing, it was for the trial court to determine whether there was a genuine issue of material fact as to whether the 2001 trust and the subsequent amendments constituted a valid testamentary document. It is a well-founded principle of law that "[a] settlor has the power to reserve the right to revoke the trust in whole or in part," to amend a trust, or to modify a trust. 76 Am. Jur. 2d, Trusts §§ 25-26, p. 58 (2005). "The only limitations on such powers to amend and revoke or to appoint are that they be exercised at the time and in the manner provided for in the instrument creating the power in

the first place." *Rollins v. Alvarez*, 792 So. 2d 695, 698 (Fla. Dist. Ct. App. 5th Dist. 2001).

In determining whether the revocation, amendment, or alteration of a trust was done in strict compliance with the provision provided for in the instrument, the Florida courts have first looked to whether the provision reserving the power to revoke was ambiguous. *L'Argent v. Barnett Bank, N.A.*, 730 So. 2d 395, 396-97 (Fla. Dist. Ct. App. 2d Dist. 1999). If the revocation reservation clause is determined to be ambiguous, then the court may look to extrinsic evidence to determine the intent of the settlor. *Knauer v. Barnett*, 360 So. 2d 399, 405 (Fla. 1978).

Prior cases under Florida law have held revocation reservation clauses to be unambiguous and therefore determined that extrinsic evidence was inadmissible. *L'Argent*, 730 So. 2d 395; *Rollins*, 792 So. 2d 695. The revocation reservation clause in *L'Argent* stated:

> [D]uring "the life of the Settlors, this trust may be amended, altered, revoked, or terminated, in whole or in part, or any provision hereof, by an instrument in writing signed by the Settlors and delivered to the trustees."

*L'Argent*, 730 So. 2d at 396 (citation omitted). The court determined that the provision was unambiguous where it clearly stated that an amendment must be made "during 'the life of the Settlors'" and "signed 'by the Settlors.'" *Id.* at 397. In *Rollins*, the revocation provision read:

> "We shall have the absolute right to amend or revoke our trust, in whole or in part, at any time. *Any amendment or revocation must be in writing, signed by both of us, and delivered to our Trustee.* . . . After the death of *one of us, this agreement shall not be subject to amendment or revocation.*"

*Rollins*, 792 So. 2d at 697 (citation omitted). It was further plain from the language in the *Rollins* case as to the exact terms of revocation and amendment where it specifically stated that the agreement was not subject to amendment or revocation after the death of one of the settlors.

However, contrary to previous cases, the plain language in the instant case did not unambiguously state the time and manner for revocation or amendment:

> Edmund A. Rasmussen and Ethel V. Rasmussen reserve the right to revoke, amend or make changes to the Trust Agreement at any point during their lifetimes.

Where a revocation clause is ambiguous, the ambiguity will not cause the clause to fail, but rather will allow the courts to look to extrinsic evidence to determine the controlling intent of the settlor. *See* *L'Argent*, 730 So. 2d at 397 ("The polestar of trust interpretation is the settlors' intent.").

This Court is unable to ascertain, from the face of the document, the intent of the settlors as to the manner and time of revocation. It is not clear what meaning is to be given to the clause "during their lifetimes." Where the clause itself creates an ambiguity, it was proper for the trial court to consider affidavits to determine the intent.

In support of the motion for summary judgment, Paul Rasmussen presented the affidavits of the drafting attorney of the 1987 Trust and the North Carolina attorney who drafted the 2001 Trust and its subsequent amendments. The affidavit of Thomas R. Gurran, drafter of the 1987 Trust containing the revocation clause, stated that the intent of Edmund and Ethel Rasmussen was to allow a right to amend or revoke the trust agreement after the death of either settlor. He further stated that the language used in the trust instrument was the standard language used to reserve a right to revoke or amend in a surviving settlor.

It is clear from the extrinsic evidence that the intent of the settlors was to allow amendment or revocation by a surviving settlor. Therefore, the amendments and revocation subsequent to the death of Ethel Rasmussen were valid, causing Day to fail in establishing each and every essential element of her claim entitling Paul Rasmussen to judgment as a matter of law.

Therefore, this assignment of error is overruled.

Accordingly, the trial court did not err in granting summary judgment in favor of Paul Rasmussen where the amendments to and revocation of the 1987 Trust were valid thereby allowing the terms of the 2001 Trust to stand.

Affirmed.

Judges CALABRIA and STEELMAN concur.