703 So.2d 487 (1997)
J. Herbert POUNDS and Rice H. Pounds, Appellants,
v.
Betty B. POUNDS, Appellee.
No. 96-3082.
District Court of Appeal of Florida, Fifth District.
November 21, 1997.
Rehearing Denied December 23, 1997.
Charles Evans Davis, Orlando, for Appellants.
George E. Adams of Adams, Hill, Reis, Adams, Hall & Schieffelin, Orlando, for Appellee.
W. SHARP, Judge.
J. Herbert Pounds and Rice H. Pounds appeal from a final order, which denied their motion to interpret a trust, and to vacate an injunction. The effect of the final order is to enjoin one of the appellants, Rice, from voting stock issued by the Pounds Motor Company, which is presently held in the Russell Pounds Trusts. The issue in this case is whether a provision in Article 4 of the 1985 Amended Trust was intended to give Rice or his nominee the right to vote the shares of the Pounds Motor Company in the Trusts, only so long as he served as a Co-Trustee. The trial court ruled that after Rice and Herbert had been removed as Co-Trustees because of a "conflict of interest,"[1] Rice's powers to vote the stock were terminated, and the sole remaining co-trustee, Betty Pounds, has the power to vote the stock. We disagree, and reverse for further proceedings.
The Trusts involved in this lawsuit were created by a 1975 inter vivos trust executed by Russell Pounds. It was funded with 400 shares of Pounds Motor Company stock (one-third of the Company's outstanding shares) and other properties. Pounds is an agricultural equipment business located in Winter Garden, Florida, that manufactures and sells farm equipment. It was incorporated in 1955 by Hoyle Pounds and his two sons, Herbert and Russell. Each was issued 400 shares of stock. Pounds Motor Company has never paid a dividend on its stock since its incorporation in 1955. Rice (Russell's son), Herbert (Russell's brother), and Steve Pounds (Russell's other son) are the current corporate officers.
In 1975, each shareholder (Hoyle, Russell and Herbert) placed his stock in a separate inter vivos trust, naming himself trustee until his death. Russell's trust was extensively amended in 1982. After Russell's death, pursuant *488 to the provisions of the Amended Trust, two trusts were created. Trust A was created to hold the trust assets and apply the income from its assets for the benefit of Russell's widow, Betty. The other Co-Trustees of the Trusts have discretionary powers to distribute the principal to Betty. Trust B was designed to hold Trust assets and apply the income or principal (in the Co-Trustees' discretion) for the benefit of Betty, and/or Russell's issue  Rice and Russell's and Betty's two other children (Steve and a daughter). Betty, Rice and Herbert were named as Co-Trustees of both Trusts. At Betty's death, the Trusts were to be merged, and the balance held in other trusts for children and grandchildren.
The Amended Trust was amended a second time on October 1, 1985, by adding the paragraph at issue in this case. The Amendment solely concerned voting the Pounds Motor Company stock. It states:
Notwithstanding anything contained in this Trust Agreement to the contrary, upon the death, incompetency or incapacitation of the Grantor, all shares of the capital stock of Pounds Motor Company, Inc. held by the Trustees hereunder shall be voted only by Rice H. Pounds, or his nominee as designated in a written instrument delivered to the Trustees, in the manner in which he deems appropriate, in his sole and absolute discretion. The other Trustees shall have no voting rights whatsoever with respect to said shares of Pounds Motor Company, Inc unless Rice H. Pounds, or his nominee fails to vote such stock.
The lower court held an evidentiary hearing to construe this provision. The testimony was without contradiction that the Grantor of the Trusts, Russell Pounds, expressly provided and intended that only Rice or Rice's nominee was to vote the Pound Motor Company stock in the Trusts, so long as he or the nominee did so. However, the attorney who drafted the Trust documents testified neither he nor Russell anticipated the circumstance that Rice would be removed as a Trustee. The trial court ruled there was no ambiguity, and held that the office of trustee carries with it the right to vote the shares of stock owned by a trust. It permanently enjoined Rice from voting the stock in the Company held by the Trusts.
In the case sub judice, Betty asserts that she should have the sole power to vote the stock of the Pounds Motor Company held in the Trusts. The minutes of a stockholder meeting, in the record on appeal, indicate that Betty also seeks to have the Company dissolved and its assets distributed to its stockholders. Since the stockholders in this case are the two Trusts, Betty's income would increase by her proportionate share in the Trusts, and it would also follow that as sole Trustee, Betty could infringe on the corpus of the trusts of which she is a beneficiary, perhaps even dissolving them.
In construing the provisions of a trust, the cardinal rule is to try to give effect to the grantor's intent, if possible. Bacardi v. White, 463 So.2d 218 (Fla.1985); First National Bank of Florida v. Moffett, 479 So.2d 312 (Fla. 5th DCA 1985); § 737.621, Fla. Stat., Rules of Construction. The grantor's intent should not be determined by resort to isolated words and phrases, but rather by a construction of the instrument as a whole, and the general plan interpreted. Id. Accord, Whitmore v. Starks, 17 Ill.2d 202, 161 N.E.2d 254 (1959); Sound City, Inc. v. Kessler, 316 So.2d 315, 316 (Fla. 1st DCA 1975).
The inter vivos trust sets up a typical marital deduction trust for Russell's wife (Betty), Trust A, and a non-taxable Trust B, for her benefit if she survives him. The Co-Trustees are required to pay the income from Trust A to her, and they have authority to pay her part or all of the principal of Trust A, as they deem advisable, for her support and welfare. Upon her death, the remainder of Trust A is to be merged with Trust B.
Similarly, Trust B is to be held by the Trustees, to pay the income to or apply it for Betty's benefit and/or Russell's and Betty's issue, in the Co-Trustees' sole discretion, giving primary consideration to Betty's needs. The Co-Trustees are also given discretion to apply all or part of the principal to the same beneficiaries, giving primary regard to Betty's needs. At Betty's death, the *489 assets of Trust B are to be held for the benefit of Russell's children and issue, with discretionary income-distribution powers given to the Trustees, as well as discretionary powers to distribute principal to the same class of beneficiaries. The Trust is not to terminate until all of Russell's children are deceased, and the youngest grandchild attains the age of 30.
However, the Trustees are specifically forbidden from distributing to any beneficiaries shares of stock in Pounds Motor Company. When the Trust terminates, the Trustees are to transfer the Trust assets in equal shares to the surviving grandchildren or issue per stirpes. But if Brian Benson Pounds, Russell's grandson, is surviving and employed by Pounds Motor Company, then his share is to include all shares of stock in Pounds Motor Company, even if the inclusion overfunds his share.
Paragraph 6 deals with the tenure and succession powers of the Co-Trustees. After Russell's death, three people are named to serve as Trustees: Betty, Rice and Herbert. The Trust further provides that if either Rice or Herbert are unable to serve as Trustee, then Russell's other brother, Donald, shall serve. And, if no person named in the Trust is able to serve as Co-Trustee, then Betty is empowered to designate and appoint any individual or corporate successor Trustee that is not a "related or subordinate party" within the meaning of the Internal Revenue Code, to serve as Co-Trustee. An additional clause provides that any successor Trustee shall be vested with the title to Trust property possessed by the Trustee which the Trustee succeeds, and shall have all Trust powers and duties possessed by the prior Trustee.
However, Betty's powers to act as Co-Trustee are limited by paragraph 3(A) of the 1982 amended Trust. It provides:
No beneficiary or Trustee (other than the Grantor) of any trust created hereunder shall have the right, power or authority to vote on or in any manner participate in any decision which would affect the amount of income or principal that he or she, or his or her legal dependents, shall receive from any trust created under this Agreement, and all such powers, authorities and discretions shall be exercised solely by the remaining Trustee or Trustees notwithstanding anything elsewhere contained in this instrument to the contrary.
These Trust provisions were no doubt inspired by the tax limitations and requirements of the Federal Estate and Income Tax Codes. Pursuant to the Trust provisions, the other Co-Trustees are to pay the income from Trust A to Betty or use it for her benefit; and make principal distributions only in their discretion. Similarly, only the Co-Trustees have the discretionary power to pay income from Trust B to Betty, as well as the principal. The fact that Betty is now sole Trustee of both Trusts and is able to make distributions to herself is contrary to the express Trust provisions, and may jeopardize any tax advantages which they could have provided.
Paragraph 4 of the 1982 Trust Document sets out the Trustees' powers to deal with the trust property. They are given broad powers to invest, to sell, to exchange property, to operate any business, to merge trusts, allot shares, and funds, employ agents, retain property, etc. With regard to stock, the Trustees are permitted to cause them to be held in the name of a nominee, but the Trustees are made responsible for the acts of the nominees. They are also authorized to vote stock.
Prior to the 1985 Amendment, the Trust language was such that the three Co-Trustees could vote the Pounds Motor Company stock as part of their duties, and any successor Trustee could also do so. This is consistent with general trust law.[2] Trustees under those circumstances must vote the stock in such a manner as to benefit the beneficiaries of the trust.[3] If the stock is in a closely held company, the trustees may be required to *490 vote the stock to require the company to pay some dividends to the beneficiary. Murdock.
However, the 1985 Amendment subtracted from the Trustees this stock voting power and gave it exclusively to Rice or his nominee. There is no requirement, in the express language itself, that Rice must be a Trustee in order to exercise this voting power, nor that his nominee must be a Trustee. Thus, no current or successor Trustee has the power to vote the stock as long as Rice or his nominee do so. There appears little ambiguity in the trust language on this point. Bogert, Trusts and Trustees 78 (2d ed.).
Although we have been unable to find any current cases dealing with this issue, it appears that like provisions, which give the power to vote stock to a person other than a trustee of a trust, or which require that the stock be voted in a specific way are valid and should be carried out. Bogert, Trusts and Trustees § 551 (2d ed); In re Feinson's Estate, 196 Misc. 590, 92 N.Y.S.2d 87 (N.Y.Sur.1949). In Feinson's Estate, the will of a decedent provided that the trustee of a trust must exercise his legal power and influence to vote for the decedent's wife as director and executive of the decedent's company as well as voting for the decedent's nephew as director and general manager. The court held those directions binding on the trustee. It analyzed the stock as a gift subject to a condition precedent. The testator had bequeathed the stock "upon the terms and conditions hereinafter set forth, and not otherwise." The court concluded that the directions given in the will to the Trustee were neither unlawful nor invalid. The direction to vote for the widow and the nephew as directors of the corporation did not offend any public policy.
In Beach v. Oneida National Bank & Trust Company of Central New York, 206 F.Supp. 508 (N.D.N.Y.1961), affirmed, 305 F.2d 826 (2d Cir.1962), the court upheld a trust as being legally valid, where a son (not a trustee) was given the power to vote stock in a trust established for a daughter. The court said that the provision to vote the stock was a limitation on the powers of the trustee, and it in no way damaged the trustee's powers or its title to the stock. It construed the trust as permitting the trustee to vote the stock in the trust only after the death of the son.
Similarly, in Elger v. Boyle, 126 N.Y.S. 946, 69 Misc. 273 (N.Y.Sup.1910), a trust set up by a decedent provided that the trustees of a trust must vote the stock as directed by six persons named in the instrument, who were directors of a corporation. The trustees of the trust claimed the right to vote the stock free from the directions of the directors. The court held the provision was valid:
I find no force in the contention that the trustees as holders of the stock, cannot be controlled in their manner of voting. The power to vote stock incidental to ownership of the stock itself may not be taken from the holder in ivitum; but he may certainly qualify his ownership by his own consent that another may vote for him, as in the familiar instance of a vote by proxy, or may accept the ownership with a condition which involves that consent, as here. These trustees became possessed of the stock, not as their own asset, but solely by virtue of the will and of the conditions which the will imposed. One condition involved their consent to a restriction of their voting power, and no rule of law or of public policy is offended by giving effect to that consent.
126 N.Y.S. at 947.
Nor does consideration of the trust documents en toto lead to a different interpretation. One of Russell's primary considerations in setting up these Trusts was to provide for Betty's welfare and support during her lifetime. But it is equally clear that Russell did not want her to ever have or exercise sole discretion and control over the Trust property. Pursuant to provisions of the Trusts, the Grantor's brother, Donald, or a qualified person named by Betty, should have been appointed as successor Co-Trustee.
The provision that only Rice or Rice's nominee can vote the stock, is consistent with other provisions of the Trusts. It is apparent that Russell planned and hoped the Pound Motor Company would continue to operate under the control of his family members, even to his grandchildren's generation.
*491 The voting provision regarding Rice indicates Russell's confidence in his son to manage the company and carry out his wishes. If Betty had the power to vote the stock as a sole trustee, she would be in a position to dissolve the family business, thereby defeating the Grantor's ultimate testamentary plan to provide for ongoing Trusts containing the Pound Motor Company stock in Trust for the benefit of his children and grandchildren.
Accordingly, we hold that the trial court erred in determining that Rice was given the voting rights to the stock only so long as he was a Trustee. There is no legal basis for the injunction entered by the trial court, which prevented him from voting the stock. Accordingly, the injunction should be vacated.
Further, we note that the Trust provisions require the appointment of an additional Co-Trustee  either Donald or a "disinterested" person named by Betty. No sole Trustee has the authority to exercise any Trust powers under these documents, unless the proper circumstances come to pass. See Coleman v. Connolly, 242 Ill. 574, 90 N.E. 278 (1909); Drinkhouse v. Birch Ranch & Oil Co., 97 Cal.App.2d 923, 219 P.2d 45 (4th Dist.1950). They have not yet occurred. On remand, the trial court should address this problem.
REVERSED and REMANDED.
GRIFFIN, C.J., and COBB, J., concur.
NOTES
[1] This case was appealed, and this court per curiam affirmed the lower court. Pounds v. Pounds, 614 So.2d 1106 (Fla. 5th DCA 1993).
[2] See Restatement of Trust (Second) §§ 193; 195; Bulova Fund, Inc. v. Henshel, 31 A.D.2d 526, 294 N.Y.S.2d 890 (1st Dept.1968); Bogert, Trusts § 551, p. 40; Scott on Trusts, Vol. Ill §§ 193, 195 (4th ed).
[3] See Jennings v. Murdock, 220 Kan. 182, 553 P.2d 846 (1976); Scott on Trusts § 193.