BENTON, C.J.
As trustee of the Carlton W. Morey, Jr., Revocable Trust, Kevin A. Morey (Trustee), appeals the trial court’s ruling that life insurance proceeds payable to the trust were not, by virtue of the provisions on the subject in the trust instrument, exempt from the claims of creditors of the estate of his brother, Carlton W. Morey, Jr. (decedent), and also appeals the denial of a supplemental petition which sought reformation of the trust. We affirm.
The decedent executed the original trust declaration[1] on January 19, 2000. The following month, he applied to Nationwide Life Insurance Company for two life insurance policies, each with death benefits in the amount of $250,000. His application for insurance named “Carl W. Morey-Trust” as the beneficiary of the “Traditional Life Policy” pertinent here.[2] On October 1, 2004, he amended and restated the trust declaration to provide:
ARTICLE I. NAME AND REVOCA-BILITY OF THE TRUST
... This Trust may be referred to as “THE CARLTON W. MOREY, JR. REVOCABLE TRUST”....
[[Image here]]
ARTICLE V. DISPOSITION OF TRUST BALANCE SUBSEQUENT TO THE DEATH OF SETTLOR
Upon the death of Settlor ..., the Trustee shall pay over and distribute the trust estate as the same shall then consist as follows:
A. The Trustee shall pay to the domiciliary Personal Representative of the Settlor’s estate from time to time such *485 sum or sums as such Personal Representative may certify to be required to pay the Settlor’s “death obligations” and such other obligations required to be paid under Florida law, which includes without limitation, the following:
1. The expenses of the Settlor’s last illness and funeral ... and the expenses of administering the Settlor’s estate ....;
2. All of the Settlor’s enforceable debts, excluding, however, debts secured by life insurance or real or personal property....
B.the Settlor’s estate, inheritance, succession and other death taxes....
C. After providing for the foregoing, the Trustee shall distribute to the Set-tlor’s Personal Representative ... such general cash bequests in such amounts as the Settlor may effectively bequeath by the Settlor’s Will. The Trustee shall also deliver to the Settlor’s Personal Representative any property in the Trust which is effectively specifically bequeathed or devised by the Settlor’s Will.
[[Image here]]
E. The balance of the Trust shall be disposed of in accordance with the below provisions.
[[Image here]]
G. Notwithstanding any provision in this Trust to the contrary: (1) After payment of all matters discussed above, the balance of the principal and undistributed income (the “residue”) shall be paid in trust for the benefit of Settlor’s children, NICOLE MOREY, AMANDA MOREY, AND DANIELLE MOREY (collectively, the “Beneficiaries” or “Beneficiary” as the context requires) under the terms and provisions of this sub-trust, which shall be known as the, “MOREY FAMILY TRUST.” The successor trustee of this Trust Agreement shall be the trustee of the MOREY FAMILY TRUST.
Among other things, the 2004 amendment and restatement created a new entity, the Morey Family Trust (as a subtrust of the Carlton W. Morey, Jr., Revocable Trust).[3] The decedent did not, however, change the beneficiary of the life insurance policy, which remained the “Carl W. Morey-Trust.”
I.
After his brother’s death, the Trustee filed a petition requesting a determination that life insurance proceeds payable to the trust were exempt from all “death obligations” and unavailable to Mr. Morey’s estate or its creditors. Here, as below, the Trustee relies on this language in section 222.13(1), Florida Statutes (2008):
Whenever any person residing in the state shall die leaving insurance on his or her life, the said insurance shall inure exclusively to the benefit of the person for whose use and benefit such insurance is designated in the policy, and the proceeds thereof shall be exempt from the claims of creditors of the insured unless the insurance policy or a valid assignment thereof provides otherwise.
While the mere fact that life insurance proceeds are payable to a trust, rather than directly to a natural person, does not deprive them of their exempt status,[4] section 733.808(1), Florida Statutes (2008), *486 makes it clear that life insurance proceeds payable to a trust “shall be held and disposed of by the trustee in accordance with the terms of the trust as they appear in writing on the date of the death of the insured.”
We therefore consider the provisions of the Carlton W. Morey, Jr. Revocable Trust, at all times the designated beneficiary of the life insurance policy, as they existed on the date of the decedent’s death. As the learned trial judge concluded, the terms of the trust (and of the insurance policy) are straightforward and unambiguous:
7. ... It is undisputed by the parties, and it is apparent from the face of the Nationwide Policy, that the sole named beneficiary of the Nationwide Policy is the Morey Trust. In turn, Section V of the Morey Trust provides an express priority and order of distribution and payment of trust assets, mandating the payment of the Estate’s expenses and obligations before the distribution of the residue, if any, to the sub-trust known as the Morey Family Trust for the benefit of the Morey daughters.
8. The Court further finds that on December 19, 2005, the Decedent executed the First Amendment To The Carlton W. Morey, Jr. Amended And Restated Revocable Trust, expressly reaffirming the Decedent’s intent that his children named under Article V(G) of the Morey Trust would be residuary beneficiaries as described in the Morey Trust and the sub-trust created thereunder.
(Boldface deleted). While life insurance proceeds are not payable directly to the estate or subject to obligations of the estate [5] merely by virtue of being directed to a grantor trust, here the clear and explicit terms of the trust make the policy proceeds available to satisfy obligations of the estate, pursuant to section 733.808(1).
A.
Conceding that section 733.808(1) provides “[s]ome support for the Trial Court’s ruling,” the Trustee contends nevertheless that, because section 733.808(1) does not mention section 222.13, “there is no indication by the Legislature that the terms of Section 733.808(1) override an exemption statute such as Section 222.13.” The two statutory provisions are not, however, in conflict. Section 222.13(1) makes an exemption from the decedent insured’s creditors available for life insurance policy proceeds, but does not require the policy’s owner to take advantage of the exemption.
In other words, the exemption rendering life insurance policy proceeds unavailable to satisfy estate obligations can be waived. The very statute that creates the exemption makes this clear:
Notwithstanding the foregoing, whenever the insurance, by designation or otherwise, is payable to the insured or to the insured’s estate or to his or her executors, administrators, or assigns, the insurance proceeds shall become a part of the insured’s estate for all purposes and shall be administered by the personal representative of the estate of the insured in accordance with the probate laws of the state in like manner as other assets of the insured’s estate.
*487 § 222.13(1), Fla. Stat. (2008). Section 222.13(1) does not prohibit life insurance proceeds’ paying the insured’s estate’s debts and other “death obligations,” nor does it prohibit directing payment of policy benefits to a trust for that purpose.
An insurance policy is a contract. The right to select the beneficiary of a life insurance policy is an aspect of the freedom to contract. The statutory exemption does not purport to restrict that freedom. The owner of an insurance policy may waive the section 222.13 exemption merely by designating the insured or one or more of the insured’s creditors as a beneficiary or beneficiaries, by naming the insured’s estate as a beneficiary of the policy or, as here, by naming as beneficiary a trust whose terms direct distribution of the trust assets to the personal representative, if requested.
B.
The Trustee also argues that the “general direction for payment of ‘death obligations’ in Article V(A) of the Trust ... does not trump the express exemption provided in Section 222.13.” But the Carlton W. Morey, Jr. Revocable Trust declaration contains more than a “general direction for payment of ‘death obligations.’ ” The entire structure of the trust bespeaks payment of “death obligations” as a primary purpose. Only once the personal representative’s demands have been met and only as to any residuum then remaining does the trust instrument give rise to the residuary subtrust of which the decedent’s daughters are named beneficiaries.
In construing the trust instrument, the document as a whole should be considered.[6] See Bryan v. Dethlefs, 959 So.2d 314, 317 (Fla. 3d DCA 2007) (Interpretation of a trust instrument “is ascertained from the four corners of the document through consideration of ‘all the provisions of the [trust] taken together, rather than from detached portions or any particular form of words. This rule prevails whether the entire [trust] or some specific clause or part of it is being construed.’ ” (quoting Sorrels v. McNally, 89 Fla. 457, 105 So. 106, 109 (1925))); Roberts v. Sarros, 920 So.2d 193, 195 (Fla. 2d DCA 2006) (“In determining the settlors’ intent, the court should not ‘resort to isolated words and phrases’; instead, the court should construe ‘the instrument as a whole,’ taking into account the general dispositional scheme.” (quoting Pounds v. Pounds, 703 So.2d 487, 488 (Fla. 5th DCA 1997))).
The apparent intent and practical result of the decedent’s estate plan is the same as if the life insurance policy named the estate itself beneficiary and the will established a residuary trust. See generally Engelke v. Estate of Engelke, 921 So.2d 693, 697 (Fla. 4th DCA 2006) (describing “revocable trusts [as] merely will substitute devices”). Only after the estate is settled would any remaining assets of the Carlton W. Morey, Jr. Revocable Trust have been available to establish the Morey Family Trust.
C.
Finally, the Trustee’s reliance on homestead cases misses the mark. Insur- *488 anee benefits are treated differently than homestead property. The Florida Constitution places restraints on the devise of homestead property for the benefit of the heirs: “Article X, § 4(c), of the Florida Constitution and F.S. 732.4015 provide that the owner of homestead property may not devise that property if survived by a spouse or a minor child.” Jeffrey A. Ba-skies & Tereina R. Stidd, Homestead, in Basic Estate Planning in Florida, § 6.12 (6th Ed. 2009).[7]
The related, but distinct, constitutional exemption of homestead property from forced sale belongs to the “surviving spouse or heirs of the owner.” Art. X, § 4(b), Fla. Const. Accordingly, “if title to the homestead passes to a person who is a member of the class described as ‘the surviving spouse or heirs of the owner,’ the homestead will be exempt from forced sale for the claims of the deceased owner’s creditors.” Homestead at § 6.16. “After the decedent’s death, the heir has legal ownership of the property, and he or she may sell it without regard to decedent’s creditors or administrative expenses.” Estate of Shefner v. Shefner-Holden, 2 So.3d 1076, 1078 (Fla. 3d DCA 2009).[8] See Monks v. Smith, 609 So.2d 740, 742 (Fla. 1st DCA 1992) (“Where a decedent is survived by a spouse or lineal descendants, homestead property is not regarded as an asset of the estate and is not subject to administration by a personal representative. Under such circumstances, the homestead passes to the heirs completely outside of the will, by operation of law.” (citations omitted)).
In the Engelke case, the court held that transfers of interests in homestead property to revocable grantor trusts did not destroy the property’s homestead character,[9] so that the constitutional exemption from forced sale inured to the benefit of the heirs named as trust beneficiaries “upon the moment of the owner’s *489 death.” 921 So.2d at 696. But insurance proceeds payable to a trust become trust assets to be “disposed of by the trustee in accordance with the terms of the trust.” § 738.808(1), Fla. Stat. (2008). With the exception of homestead (and other limitations not pertinent here), it “is an elementary principle that a person can dispose of his or her property by will [or transfer in trust] as he or she pleases so long as that person’s intent is not contrary to any principle of law or public policy.” McKean v. Warburton, 919 So.2d 341, 344 (Fla.2005).
II.
After the trial court ruled the life insurance proceeds were not exempt under the terms of the trust, the Trustee filed a supplemental petition for reformation of the trust to express the settlor’s purported intent that life insurance proceeds “be exempt, paid into the Morey Trust for the sole and exclusive use, benefit and protection of the Decedent’s children, ... and that such exempt proceeds would flow directly, without setoff or deduction of any kind, into the subtrust known as the Mor-ey Family Trust so that the Decedent’s children would receive the sole and exclusive benefit of the total amount of the insurance proceeds.” The trial court held an evidentiary hearing on the supplemental petition, concluded the Trustee failed to prove entitlement to reformation of the trust, denied the petition for reformation on that ground, and entered final judgment directing compliance with the trust provisions concerning disposition of trust assets.
Pursuant to section 736.0415, Florida Statutes (2008), a “court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor’s intent if it is proved by clear and convincing evidence that both the accomplishment of the settlor’s intent and the terms of the trust were affected by a mistake of fact or law,” and “may consider evidence relevant to the settlor’s intent even though the evidence contradicts an apparent plain meaning of the trust instrument.” Reformation is available for a mistake in the form of expression or articulation — an error that “arises when a donative document includes a term that misstates the donor’s intention ..., fails to include a term that was intended to be included ..., or includes a term that was not intended to be included.” Restatement (Third) of Prop.: Wills & Other Donative Transfers § 12.1 cmt. i (2003).
The Trustee argues on appeal that the trial court erred in ruling that he failed to prove grounds for reformation of the trust, while not disputing that “the party seeking reformation at all times has the burden to prove, by clear and convincing evidence,[10] that the trust, as written, does not reflect the settlor’s intent.” Reid v. Estate of Sonder, 63 So.3d 7, 10 (Fla. 3d DCA 2011). But “ ‘an appellate court may not overturn a trial court’s finding regarding the sufficiency of the evidence unless the finding is unsupported by record evidence, or as a matter of law, no one could reasonably find such evidence to be clear and convincing.’ Thus, in this case, it is not our function to conduct a de novo review of the evidence, but simply to determine whether there exists in the record competent substantial evidence to support *490 the judgment of the trial court.” Id. (citations omitted). Reviewing the record in the present case, it is clear that a reasonable trier of fact could have been left — as the learned trial judge was — without a firm belief or conviction that the trust terms were contrary to the decedent’s intent at the time he executed the (last amendment to the) trust declaration.[11]
Mr. Morgan, who drafted the trust instruments for the decedent, testified that the decedent, an experienced businessman, read everything before executing the trust amendments which created the Morey Family Trust.[12] The amendments plainly refer to this subtrust’s receiving “the residue” and to the children’s receiving the “residuary estate as described in the Trust and in the subtrust.” Proof that the decedent reviewed the documents before executing them does not alone preclude an order of reformation. See Restatement (Third) of Prop.: Wills & Other Donative Transfers § 12.1 cmt. 1 (2003). But there is no evidence in the present case that the decedent was not fully capable of understanding the trust documents, as written.
“A reformation relates back to the time the instrument was originally executed [or amended] and simply corrects the document’s language to read as it should have read all along.” Providence Square Ass’n, Inc. v. Biancardi, 507 So.2d 1366, 1371 (Fla.1987). It was clear when the estate planning documents were executed that the estate would need cash to pay for liability and casualty insurance, maintenance and operating expenses, and to make payments of principal, interest, and taxes to prevent foreclosures. Mr. Morgan testified that the decedent’s primary asset in 2000 was a retail business, and that one of his primary concerns at that time was that his estate have liquidity so that “there wouldn’t have to be a fire sale of any business.”
The decedent’s estate did consist mainly of illiquid assets: Among the estate assets were seven corporations and one limited liability company operating a number of for-profit businesses, including twenty-six rental properties and another apartment complex. Excluding exempt homestead property, the estate’s estimated fair market value exceeded $8,000,000 (before offsetting liabilities were taken into account).[13] The amended estate inventory also indicated the decedent had over twenty-five vehicles, owned either individually *491 or by closely held corporations. Insurance proceeds payable directly to the estate amounted to perhaps a tenth of the estate’s total liabilities.
The record leaves no doubt that the decedent had great affection for his daughters and great concern for their welfare. Orderly administration of the estate would, after all, have inured to the benefit of the daughters, if estate assets had exceeded liabilities and the residuary estate had poured over.[14] In the circumstances, however, the trial court could reasonably conclude that the primary purpose of the life insurance policy payable to the Carlton W. Morey, Jr. Revocable Trust was to provide liquidity, if needed, in order to maintain and preserve real properties and businesses for the estate, and otherwise to facilitate administration of the estate so that estate assets could be sold in some orderly fashion. More to the point, the trial court was entitled to find that the Trustee did not clearly and convincingly prove otherwise.
The trial court did not err in ruling that deterioration in the decedent’s financial circumstances between the time he executed estate planning documents and the date of his death[15] — which in the event resulted in a lack of any residuum with which to fund the Morey Family Trust — did not constitute a “mistake” requiring reformation of the trust documents. Reformation is not available to modify the terms of a trust to effectuate what the settlor would have done differently had the settlor foreseen a change of circumstances that occurred after the instruments were executed. See, e.g., Restatement (Third) of Prop.: Wills & Other Donative Transfers, at cmt. h (2003) (Reformation is not “available to modify a document in order to give effect to the donor’s post-execution change of mind ... or to compensate for other changes in circumstances.”).
Affirmed.
THOMAS, J., and SANTURRI, THOMAS R., Associate Judge, concur.

. No copy of the original version is in the record.

. The application named "Florida Home A/C & Appliances” as beneficiary of a "Second Traditional Life Policy.” On a separate part of the application titled "Q. REMARKS," an insurance agent wrote that the "applicant is applying for (2) 250,000 Term policies. One of them for the trust to benefit his daughters, the other one for the continuation of the business.”

. A First Amendment to the restated trust, that Carlton W. Morey, Jr. executed on December 19, 2005, provided it was "Settlor’s intent Settlor's children named under Article V(G) receive his residuary estate as described in the Trust and in the subtrust described therein.”

. See generally § 733.808(4), Fla. Stat. (2008).

. Life insurance proceeds payable to a trust "shall not be deemed to be part of the decedent's estate, and shall not be subject to any obligation to pay the expenses of the administration and obligations of the decedent's estate or for contribution required from a trust under s. 733.607(2) to any greater extent than if the proceeds were payable directly to the beneficiaries named in the trust.” § 733.808(4), Fla. Stat. (2008).

. The purpose and effect of the document as a whole establishes the context in which each specific provision must be read. Illustrative on this point is Engelke v. Estate of Engelke, 921 So.2d 693, 697 (Fla. 4th DCA 2006) ("Here, the provisions of the revocable trust effective upon Paul’s death provided generally that the trustee would pay any expenses that the estate could not pay. Yet the trust also specifically directed that the homestead be available to Judy during her lifetime with Paul's children to receive it following the termination of Judy’s interest. The trust cannot be read as requiring the sale of the homestead. In fact, the opposite conclusion must be drawn.”).

. If the owner of homestead property is survived by a minor child, "the devise of homestead property is absolutely prohibited.” Jeffrey A. Baskies & Tereina R. Stidd, Homestead, in Basic Estate Planning in Florida, § 6.12 (6th Ed. 2009). If no minor child survives, but the owner is survived by a spouse, "the homestead property may be devised, but only to the surviving spouse.” Id. "[Hjomestead does not become a part of the probate estate unless a testamentary disposition is permitted and is made to someone other than an heir, i.e., a person to whom the benefit of homestead protection could not inure.” Harrell v. Snyder, 913 So.2d 749, 751 (Fla. 5th DCA 2005).

. If, however, neither spouse nor minor child survives, the decedent need not devise homestead property to an heir, in which case the homestead exemption from forced sale is extinguished. See Cutler v. Cutler, 994 So.2d 341, 346 n. 3 (Fla. 3d DCA 2008). See also Engelke, 921 So.2d at 696 ("It is only when the testator directs that a freely devisable homestead be sold and distributed to a devi-see that the constitutional protection from creditors is disregarded. In such a case, the decedent has devised money and not the homestead itself. Otherwise, the homestead protections against forced sale ■ attach upon the moment of the owner's death.” (citation omitted)); Knadle v. Estate of Knadle, 686 So.2d 631, 632 (Fla. 1st DCA 1996) (holding that a decedent, survived by adult children but no spouse, could direct by will that homestead property be sold and the sale proceeds be added to his estate with the result that the sale proceeds lose their homestead character and become subject to the claims of creditors).

.The Engelke court explained:
We note that iii this case while Paul's residence was held in a revocable trust, it was owned by a "natural person” for purposes of the constitutional homestead exemption. Because Paul retained a right of revocation, he was free to revoke the trust at any point in time. Accordingly, he maintained an ownership interest in his residence, even though a revocable trust held title to the property.
Engelke, 921 So.2d at 696.

. "This standard is an intermediate standard of proof between the ‘preponderance of the evidence’ standard used in most civil cases, and the ‘beyond a reasonable doubt standard’ of criminal cases, requiring the evidence ‘[to] be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.’ ” Reid v. Estate of Sonder, 63 So.3d 7, 10 (Fla. 3d DCA 2011) (citations omitted).

.The time the governing documents were executed is the pertinent point in time. The Restatement provides the following illustration:
3. G's will devised his government bonds to his daughter, A, and the residue of his estate to a friend. Evidence shows that the bonds are worth only half of what they were worth at the time of execution of the will and that G would probably have left A more had he known that the bonds would depreciate in value.
This evidence does not support a reformation remedy. G's mistake did not relate to facts that existed when the will was executed.
Restatement (Third) of Prop.: Wills & Other Donative Transfers § 12.1 cmt. h, illus. 3 (2003).

. The trial court raised the question whether what counsel really sought was an amendment to the insurance policy: "It's more like you’re asking me to reform the terms of the insurance policy beneficiary designation than you are the terms of the trust by sending the money to a different trust rather than the residuary of the original trust.”
The Morey Family Trust was never named a beneficiary of the life insurance policy. Nor did the decedent make any other change of beneficiaries in the insurance policy after the trust amendments that created the Morey Family Trust.

. An amended estate inventory put the estimated fair market value of the real property at $7,350,500.

. The Carlton W. Morey, Jr. Revocable Trust was the residuary beneficiary under the decedent’s will.

. Between the time the Nationwide policies were issued in 2000 and the decedent's death in 2008, his financial situation seems to have taken a turn for the worse. The personal representative of the decedent's estate filed a petition for authority to retain special counsel for the estate for the purpose of filing federal bankruptcy proceedings for several of the businesses (including the limited liability company and Carl Morey Properties, Inc., which owned real properties).