NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

MARGUERITE VIGLIANI; GLORIA )
VIGLIANI; SYLVIA VIGLIANI; MARIO A. )
VIGLIANI; LINA CLARK; ALESSANDRA )
CLARK BENSON; CAMILLA CLARK; )
JULIA CLIVE; and PIA CLIVE, )
)
        Appellants, )
)
v. )    Case No. 2D14-4595
)
BANK OF AMERICA, N.A., in its capacity )
as trustee for the Mario Vigliani )
Revocable Living Trust, )
)
        Appellee. )
                                  )

Opinion filed March 9, 2016.

Appeal from the Circuit Court for Sarasota
County; Deno G. Economou, Judge.

Susan E. Stenger, Brian D. Bixby, and
Melissa E. Sydney of Burns & Levinson
LLP, Boston, Massachusetts, for
Appellants.

Bernard A. Jackvony of Pannone Lopes
Devereaux & West LLP, Boca Raton; and
John R. Hargrove of Hargrove Law Group,
Boca Raton (withdrew after briefing), for
Appellee.

ALTENBERND, Judge.

        The appellants in this case are the children and grandchildren of Mario

Vigliani, who is the deceased settlor of the trust that is at the center of this dispute.

When this lawsuit commenced in the trial court, Maryann Vigliani, the wife of the settlor, was a co-trustee along with the Appellee, Bank of America, N.A. Unfortunately, Mrs. Vigliani died following the recent oral argument in this case, and the bank is now the sole trustee. The children and grandchildren are the beneficiaries of the "Family Trust," and we will refer to them as "the Beneficiaries." We will refer to the bank as the "Trustee."

The very narrow issue presented by this case is whether the terms of the settlor's revocable living trust required the funding of the Family Trust at the time of the settlor's death with $3.5 million, $5 million, or perhaps with some other amount. The co-trustees filed an action for declaratory relief, and the Beneficiaries fully cooperated to obtain a judicial determination at summary judgment. The trial court decided that the Family Trust should be funded with $3.5 million, which would increase the marital share payable to the wife outside of the Family Trust.[1] On de novo review, we conclude that the trial court erred in establishing this amount.

The Beneficiaries would have this court hold that the amount payable to the Family Trust must be $5 million. In reviewing the trust agreement, and specifically Article VIII and the "Statements of Intentions" therein, we are unconvinced that this court can safely set the amount at $5 million based on the record before us. If in fact the co-trustees filed an estate tax return in which they utilized a $5 million estate tax

---

[1]Mrs. Vigliani was not a party in her own right in the trial court. From the record, we believe that a transfer of the trust funds to Mrs. Vigliani did not occur prior to her death and that her estate is not a necessary party to this appeal. Whether her estate may become a necessary party in the trial court will be a matter for that court to consider.

exemption, the Beneficiaries may be correct in their position. Because the "Statement of Intentions" played no role in the trial court's decision, we simply are not confident that this record allows us to resolve a question that appears to involve significant tax issues upon which the parties have not stipulated or presented undisputed evidence. Moreover, the actual division of the trust depending on the circumstances at the date of the settlor's death would appear, under both the terms of the trust and statutory law, to be a task for Bank of America to perform as trustee. See § 736.0801, Fla. Stat. (2009). Thus, on remand, it may be appropriate for the Trustee to make a new decision about the division of the trust before the trial court is called upon to take any action. Accordingly, we reverse the judgment and remand for further proceedings in the trial court.

The facts involved in this case, at least to this point, are undisputed and relatively simple. The estate tax laws applicable to the facts, however, are complex. Mario Vigliani created a revocable trust in 1994. He executed a "Restatement of the Trust Agreement" (the "Restatement") in September 2009. The Restatement provided that its interpretation and the meaning and effect of the terms of the Restatement would be governed by the laws of Florida. Mario Vigliani died on May 1, 2010.

Under the terms of the Restatement, upon Mr. Vigliani's death, the co-trustees were required to make certain distributions and then divide the remainder of the trust corpus, or the "Trust Estate," into two shares so long as Mr. Vigliani's wife survived Mr. Vigliani. The first share is described as the "Marital Share," and the second share is the Family Trust. Article VII of the Restatement describes the division. The Marital Share is the balance of the Trust Estate after the share for the Family Trust has been

- 3 -

funded. Article VII continues: "The Family Trust shall be funded with that portion of the Trust Estate equal to the federal individual exemption amount, undiminished by any estate, inheritance, succession, death or similar taxes, subject to the provisions of Article VIII." (Emphasis added.)

The content of Article VIII in its entirety, with the most important portions underlined to assist the reader, states:

> **Economic Growth and Tax Relief Reconciliation Act Control Article Introductory Provision.** Congress enacted the Economic Growth and Tax Relief Reconciliation Act (the Act), which has created some uncertainty as to the application and the extent of the application of the federal estate tax and the generation-skipping tax on an individual's estate. It is also possible that Congress will make further changes in the application of these taxes. The preceding Article reflects my plan for division into shares/trusts for my beneficiaries based on my death occurring at the time this Trust Agreement is executed. This Article is intended to control the actual division in shares/trusts depending on the circumstances at my actual date of death. It is, therefore, my intention that this Article at my death will control whether the disposition of the Trust Estate is as provided in the preceding Article or as specifically modified or provided in this Article. In this Article reference to "the Trust Estate" shall mean that portion of the Trust Estate disposed of by the preceding Article.

> **(1) Federal Estate Tax Repealed And Wife Survives.** If the federal estate tax has been repealed and is not in effect upon my death, rendering no federal estate taxes due, and my wife shall survive the Settlor, then the Trust Estate shall be divided into two shares. One share shall be made up of the 2009 federal exemption amount of $3.5 million and one share shall be the remainder of my Trust Estate. The share made up of the 2009 federal exemption amount of $3.5 million shall be held in **the Family Trust**, as provided herein. The remainder share shall be distributed outright to my wife as **the Marital Share**, as provided herein.

**(2) Federal Estate Tax Repealed And Wife Does Not Survive.** If the federal estate tax has been repealed and is not in effect upon my death, and my wife shall not survive the Settlor, then the Trust Estate shall be held, administered and distributed under **the Family Trust** as provided herein.

**(3) Statement of Intentions.**

(a) These are statements of my intentions:

(i) that my wife be adequately provided for during her lifetime;

(ii) that, after my wife's death, my children and a child's issue, if a child is deceased, be adequately provided for;

(iii) that the smallest amount of estate taxes (if any) be paid at my death and my wife's subsequent death;

(iv) that the smallest amount of generation-skipping transfer tax (if any) be paid at my death and my wife's subsequent death;

(v) if carryover basis is in effect at my death, the Settlor intends for his personal representative or trustee to allocate basis exemptions in a way to benefit his family as described above;

(vi) that no adverse tax consequences occur as a result of some subsequent act by Congress not anticipated by the Settlor[.]

**(4) Discretion to Deal with Carryover Basis.** If carryover basis becomes applicable, the Settlor grants to the personal representative and/or trustee the authority to make decisions and allocations of any exemptions associated with carryover basis to benefit my Trust Estate consistent with the statement of intentions of the Settlor as may be provided in this Trust Agreement and to take any other actions which would be beneficial in achieving these objectives.

To understand Article VIII, one must understand the historical context in which it was written. As explained in the parties' filings in the trial court and in this court,[2] when the Restatement was executed, the applicable federal estate tax law was provided for under the "Economic Growth and Tax Relief Reconciliation Act of 2001," Pub. L. No. 107-16, 115 Stat. 38 (2001). That law provided for a gradually increasing estate tax exemption that peaked for individuals who died in 2009 at $3.5 million. Pub. L. No. 107-16, § 521(a). The exemption was accompanied by a step-up in the basis for any inherited assets, meaning that for purposes of income taxes on capital gains the basis of these assets would be valued at whatever their fair market value was at the time of the decedent's death. See 26 U.S.C. § 1014(a) (2001); cf. Pub. L. No. 107-16 § 541. The 2001 act also provided for the repeal of the estate tax for individuals dying in 2010. Pub. L. No. 107-16 §§ 501(a), 901(a)(2); see also Beim v. Hulfish, 83 A.3d 31, 38 (N.J. 2014) (discussing aspects of the 2001 act). The tax savings associated with this repeal, however, were offset to some extent by the creation of a carry-over of the decedent's basis on inherited assets, which in theory would ultimately increase income tax paid by the inheritors on capital gains experienced upon disposition of the inherited property. See Pub. L. No. 107-16 §§ 541, 542.[3] The act was also subject to sunset in

---

[2]This record contains no expert affidavit from an accountant or a tax attorney concerning the tax issues involved in this case. The attorneys who have briefed these issues have not supported their positions with citations to authoritative treatises or similar information. The limited record compels this court to reverse the order on appeal but does not allow us to make an alternative legal ruling.

[3]The 2001 act provided that property acquired from an individual dying in 2010 "shall be treated . . . as transferred by gift" and that the basis of such property would be the lower of either the adjusted basis of the decedent or the fair market value of the property at the date of the decedent's death. Pub. L. No. 107-16 § 542.

2011, which would have revived the estate tax law in existence prior to the effective date of the 2001 act. Pub. L. No. 107-16 § 901; see also Beim, 83 A.3d at 38.

In 2009, there were political pressures to revise the 2001 law, but no one knew what the final outcome might be. Thus, Article VIII in the Restatement directly addresses two possible outcomes in sections (1) and (2) and then provides a "Statement of Intentions" to guide other possible outcomes.

Congress did not allow the federal estate tax to be repealed. Instead, it enacted the "Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010," Pub. L. No. 111-312, 124 Stat. 3296 (2010). The new act created two possibilities for the estates of individuals like Mr. Vigliani, who died in 2010. First, the act created a default rule that voided the repeal of the estate tax provided for in the 2001 act and allowed for a continuation of the individual federal estate tax exemption and a step-up in the basis for inherited assets. See Pub. L. No. 111-312 § 301(a), (b). However, the 2010 act increased the individual exemption from $3.5 to $5 million so that only estates larger than $5 million were required to pay an estate tax under the default rule. See Pub. L. No. 111-312 § 302(a)(1). Second, the personal representative of these estates could affirmatively elect to opt out of the default rule and to disregard the provisions of the 2010 act repealing the 2001 act. See Pub. L. No. 111-312 § 301(c). If an estate opted out, the step-up in basis would not occur. Instead, the carryover basis rules from the 2001 act would apply for inherited assets, resulting in a likely increase in capital gains taxes paid by the parties inheriting the property. See id.; see also 9 Susan Kalinka, Jeffrey W. Koonce, & Philip T. Hackney, La. Civ. L. Treatise, LLC & P'ship: A Guide to Bus. & Tax Planning § 3:23 (4th ed. 2015).

- 7 -

From the pleadings in this case, it is our understanding that the co-trustees filed an estate tax return relying on the default rule and the $5 million exemption; that is, they did not affirmatively elect to opt out of the default rule. But the record contains only an edited copy of that tax return, and we cannot establish from the evidence in the record that the co-trustees in fact relied on the higher exemption.

As presented by the parties, the issue in this case is whether the Family Trust—which, according to Article VII of the Restatement, "shall be funded" with an amount "equal to the federal individual exemption amount, . . . subject to the provisions of Article VIII"—shall be funded with the $3.5 million exemption that applied at the time the Restatement was executed or the $5 million exemption that applied at the time of Mr. Vigliani's death. The Trustee argues that the trial court correctly determined that the Family Trust should be funded with $3.5 million, the exemption available when the Restatement was executed in 2009, because language in Article VIII makes clear that Mr. Vigliani intended the amount to be determined as if he had died on the date the Restatement was executed. The Beneficiaries argue that this interpretation incorrectly isolates a single portion of Article VIII; fails to properly interpret the Restatement as a whole, including the Statement of Intentions; and thus fails to honor the settlor's intent in funding the Family Trust, which was largely to "avoid paying estate taxes to the extent possible."

The trial court's order does not contain any extensive explanation of its decision to grant the Trustee's motion for summary judgment. The court did, however, explain its reasoning on the record in open court; it essentially accepted the co-trustees' argument. The trial court concluded that the reference in Article VIII to the "preceding

Article, meaning Article VII, reflect[ing] my plan for division into share/trusts for my beneficiaries based on my death occurring at the time this Trust Agreement is executed," required the Family Trust to be funded with the 2009 exemption amount of $3.5 million. As a result, the trial court had no occasion to consider the provisions in the Statement of Intentions in section (3) of Article VIII.

We review de novo the trial court's ruling, which was based on the language of the Restatement. See Roberts v. Sarros, 920 So. 2d 193, 194-95 (Fla. 2d DCA 2006). "[T]he polestar of trust interpretation is the settlor['s] intent." Id. at 195 (quoting L'Argent v. Barnett Bank, N.A., 730 So. 2d 395, 397 (Fla. 2d DCA 1999)). If the language in the trust is unambiguous, the settlor's intent as expressed therein controls and the court cannot rely on extrinsic evidence. Id. To determine the settlor's intent, "the court should construe 'the instrument as a whole,' taking into account the general dispositional scheme." Id. (quoting Pounds v. Pounds, 703 So. 2d 487, 488 (Fla. 5th DCA 1997)). It "should not 'resort to isolated words and phrases.' " Id. (quoting Pounds, 703 So. 2d at 488). This is true whether the court is interpreting the entire trust or only a specific clause. Bryan v. Dethlefs, 959 So. 2d 314, 317 (Fla. 3d DCA 2007).

The trial court erred when it isolated select provisions of Articles VII and VIII and did not interpret that language in the context of the remaining provisions in those two articles, in particular the Statement of Intentions in Article VIII. Simply put, the settlor did not die at the time the Restatement was executed. As a result, it is clear from the language of the Restatement that "the circumstances at [his] actual date of death" were to be considered in dividing the trust. When read together, we conclude

- 9 -

that the settlor is explaining in these two articles that he wants the Family Trust to be funded with the federal individual exemption amount applicable in 2009 unless the "circumstances at [his] actual date of death" required a different outcome. The four sections in Article VIII give guidance to the Trustee as to what "circumstances" concerned the settlor and what the settlor's intentions were as to those "circumstances." It is obvious from the content of Article VIII that the primary circumstance creating uncertainty for the settlor was the unresolved status of federal estate tax law.

We note that although sections (1) and (2) in Article VIII illustrate the settlor's concern with this uncertainty in the tax law, these sections are not directly applicable to a reading of the Restatement in this case because the federal estate tax was not repealed as provided for in the 2001 Act. See Pub. L. No. 111-312 § 301(a), (b). Because the provisions on which the trial court focused do not specify the amount of the share for the Family Trust once it was established that a major change in estate tax law occurred in 2010, it is necessary to consider the Statement of Intentions in making the division.

From the arguments of both sides, it appears that "intentions" (i) and (ii) do not involve circumstances that will be important in making the division. Fortunately, the settlor's assets were sufficient to provide adequately for his wife during her lifetime and presumably to provide for the Beneficiaries as well. Intention (iii) requires that the "smallest amount of estate taxes (if any) be paid" at the settlor's death and that of his wife. The Beneficiaries at least believe that a $5 million allocation will or has already fulfilled this intention. This position is intuitively reasonable, but there is no evidence or

stipulation in the record to confirm this belief.  Given the complexity of these tax issues, intuition may fail us.

Intention (iv) requires one to consider "that the smallest amount of generation-skipping transfer tax (if any) be paid" at the time of the settlor's death and that of his wife.  Again, this record does not safely establish the outcome that fulfills this goal.  We can make the same conclusion as to (v) and (vi).  In particular, (vi) states the settlor's general intent "that no adverse tax consequences occur as a result of some subsequent act by Congress not anticipated by the Settlor."  This may authorize the Trustee to consider a broader array of tax issues, including income tax consequences for the settlor's wife and the Beneficiaries, in determining the amount of the Family Trust.

Finally, section (4) of Article VIII gives the Trustee discretion to deal with any applicable carryover basis.  If the Beneficiaries are correct that the default rule and the $5 million exemption applied, then seemingly no carryover basis would be applicable.  But again, from this record, we cannot determine what decisions the co-trustees made or what decision the Trustee may need to make under section (4).

We conclude that it is clear from Article VIII that other "circumstances"—namely, significant changes in the applicable tax law—existed at the time of the settlor's death that likely required funding the Family Trust with an amount other than the $3.5 million exemption available at the time the Restatement was executed.  It was error for the trial court not to consider Articles VII and VIII in their entirety in ruling on the parties' motions for summary judgment.  However, a proper resolution of this issue involves significant and likely complex issues of tax law, which may include questions of fact that

were not addressed by the trial court or agreed upon by the parties. We are not entirely certain that $3.5 million and $5 million are the only two options available to the decision-maker. As a matter of trust law, it seems that the Trustee should be given the opportunity to exercise its fiduciary duties and to be the decision-maker on this issue. Thus, we cannot hold that the Family Trust must be funded with the $5 million exemption amount, and we must remand for a proper resolution. The parties, to their credit, have cooperated fully in this case up to this point. With their continued cooperation, this dispute should reach a speedy resolution on remand.

Reversed and remanded.

SILBERMAN and SLEET, JJ., Concur.