DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

———————————————

VIOLETTA GRASSFIELD, individually and as successor
trustee of the Bruce A. Grassfield 2003 Revocable Trust, as
restated and amended as of May 7, 2019,

Appellant,

v.

PAUL GRASSFIELD, individually and as trustee of the
Amendment and Restatement of Trust of Bruce A. Grassfield
2003 Revocable Trust dated December 14, 2014, and
amended on September 2, 2016,

Appellee.

No. 2D22-600

———————————————

December 13, 2023

Appeal from the Circuit Court for Manatee County; Diana L. Moreland,
Judge.

David A. Wallace of Bentley Goodrich Kison, P.A., Sarasota; and Mark A.
Schwartz and Bonnie Lee A. Polk of Williams Parker Harrison Dietz &
Getzen, Sarasota, for Appellant.

Kimberly A. Bald and Aaron B. Crittenden of Harllee & Bald, P.A.,
Bradenton, for Appellee.


LABRIT, Judge.

The history of this case is long and winding, but the road leads to a

straightforward question: Does compliance with some—but not all—

requirements of a settlor's stated method to amend his trust constitute

"substantial compliance" under section 736.0602(3)(a), Florida Statutes

(2018)?  On this record, we answer the question in the negative.  And we affirm the final judgment invalidating certain trust amendments because they did not substantially comply with the method set forth in the trust.

## I.

In 2003, Bruce Grassfield created a revocable trust and selected two trustees to manage it—himself and his financial advisor.  They remained the trustees until 2016 when Bruce amended the trust by naming himself and his son Paul Grassfield as trustees and by removing the financial advisor as a trustee.  The 2016 amendment also adopted and left untouched a provision of the trust that reserved Bruce's power as the donor to revoke or amend the trust as follows:

> The Donor reserves the power, at any time, or from time to time, to alter, amend, restate, terminate or revoke, in whole or in part, the terms and provisions of this Trust, and the Trust hereby created, by an instrument, in writing, signed by the Donor, acknowledged before a Notary Public, and delivered to the Trustee during the Donor's lifetime.

Neither party challenges the validity of this provision, Paul's appointment as cotrustee, or any other part of the 2016 amendment.  But things took a turn after this amendment, which led to years of contentious litigation that ultimately brought the parties to this court.

In August 2018, Bruce executed a "Restatement of the Bruce A. Grassfield 2003 Revocable Trust."  The 2018 restatement purported to remove Paul as cotrustee, leaving Bruce as the sole trustee.  It also purported to make Violetta Lashauri-Wofsey—whom the trust identified as "the Grantor's friend"—the primary beneficiary of the trust.[1]  Bruce

---

[1] The 2018 restatement also named Judicial Watch, Inc., Leadership Institute, and Project Veritas as contingent beneficiaries in the event of Violetta's death.  These entities separately appealed the final judgment under case number 2D22-502, which traveled together with this appeal and was consolidated for record and oral argument purposes.

then married Violetta in October 2018, and she became Violetta Grassfield.  Next, in January and May 2019, Bruce executed two more trust documents—a "First Amendment to the Restatement of the Bruce A. Grassfield 2003 Revocable Trust" and a "Second Amendment to the Restatement of the Bruce A. Grassfield 2003 Revocable Trust."  The first amendment purported to transfer additional assets to Violetta upon Bruce's death, and the second amendment purported to name Violetta a successor trustee after Bruce.  The second amendment also changed how the trust assets would be handled upon Bruce's death; they were to pour back into his estate and be distributed pursuant to a last will and testament that Bruce also created in May 2019, in which he named Violetta the sole beneficiary of his estate.

Bruce passed away in August 2019 at the age of ninety-two. Violetta filed a probate action, which Paul opposed.  Paul also filed a separate civil action seeking to invalidate the 2018 restatement and 2019 amendments to the trust.  Paul alleged that he was a trustee when Bruce attempted to amend the trust through these instruments, that the trust required delivery of such instruments to the trustee, and that no delivery to Paul was made or even attempted during Bruce's lifetime.  Violetta did not dispute these facts.  But she argued that section 736.0602(3)(a) only requires "substantial compliance" with a trust's amendment method and that the 2018 restatement and 2019 amendments substantially complied despite the lack of delivery to Paul.

Paul moved for summary judgment on this issue and the trial court ruled in his favor.  It entered a final judgment finding the 2018 restatement and 2019 amendments to the trust invalid, thereby establishing the 2016 version of Bruce's trust as the valid and enforceable trust instrument.  This is Violetta's appeal.  We review the

3

trial court's grant of summary judgment de novo, *Fitness Int'l, LLC v. 93 FLRPT, LLC*, 361 So. 3d 914, 918 (Fla. 2d DCA 2023), and we apply the same standard to the trial court's interpretation of the trust and section 736.0602(3)(a), *Giller v. Grossman*, 327 So. 3d 391, 393 (Fla. 3d DCA 2021).

## II.

Section 736.0602(3)(a) of the Florida Trust Code[2] provides that a "settlor may revoke or amend a revocable trust . . . [b]y substantial compliance with a method provided in the terms of the trust." The code does not define "substantial compliance," nor has any appellate court defined it since the legislature adopted section 736.0602 in 2007. *Cf.* § 736.0103 (defining other terms used in the Florida Trust Code); *Bernal v. Marin*, 196 So. 3d 432, 435 (Fla. 3d DCA 2016) (stating in dicta that a "settlor need only substantially comply with the method provided in the terms of the trust" under section 736.0602(3)(a)).

Nonetheless, we have several tools to determine whether Bruce substantially complied with the amendment method he prescribed in his trust. First, we look to the language of the trust itself. "The polestar of trust interpretation is the settlor's intent," and "if the language in the trust is unambiguous, the settlor's intent as expressed therein controls." *Vigliani v. Bank of Am., N.A.*, 189 So. 3d 214, 219 (Fla. 2d DCA 2016) (cleaned up). We likewise construe the trust instrument as a whole and don't confine our review to isolated words or phrases. *Id.*

The Uniform Trust Code (UTC) also provides guidance. In discussing a section of the UTC that largely mirrors the language of section 736.0602(3)(a), the UTC explains:

---

[2] Per section 736.0101, chapter 36 of the Florida Statutes is referred to as the "Florida Trust Code" or the "code."

4

Under subsection (c) [of UTC section 602], the settlor may revoke or amend a revocable trust by substantial compliance with the method specified in the terms of the trust . . . . Only if the method specified in the terms of the trust is made exclusive is use of other methods prohibited. Even then, a failure to comply with a technical requirement, such as required notarization, may be excused as long as compliance with the method specified in the terms of the trust is otherwise substantial.

While revocation of a trust will ordinarily continue to be accomplished by signing and delivering a written document to the trustee, other methods, such as a physical act or an oral statement coupled with withdrawal of the property, might also demonstrate the necessary intent. These less formal methods, because they provide less reliable indicia of intent, will often be insufficient, however. The method specified in the terms of the trust is a reliable safe harbor and should be followed whenever possible.

Unif. Tr. Code § 602 cmt. (Nat'l Conf. of Comm'rs on Unif. State L. 2003). This comment suggests that substantial compliance may exist where a "technical" aspect of the settlor's method is skipped. But it also emphasizes that the settlor's prescribed method "should be followed whenever possible," and it suggests that signing and delivering a written instrument to the trustee is an ordinary and reliable method to amend or revoke a trust.

Here, the method that Bruce prescribed plainly required these things. More specifically, Bruce reserved the power to amend or revoke the trust "by an instrument, in writing, signed by [Bruce], acknowledged before a Notary Public, and delivered to the Trustee during [Bruce's] lifetime." The parties don't dispute that the 2018 restatement and 2019 amendments satisfied the first three requirements; they were written instruments that Bruce signed and a notary acknowledged. But there also is no dispute that the remaining requirements—delivery to "the

Trustee" during Bruce's lifetime—required delivery to both trustees[3] and that the 2018 and 2019 instruments were not delivered to Paul during Bruce's lifetime.

Violetta argues that there was "substantial compliance" because delivery to Paul as trustee was a "non-essential" requirement. We disagree based on the plain terms of the trust. The trust provided that "[t]here shall always be at least two Trustees," and it required a "unanimous act" of two trustees for "all decisions, actions and discretion" they made or exercised under the trust. Clearly Bruce regarded having two trustees as indispensable, and nothing could be accomplished without the involvement of both. And while the trust also reserved Bruce's right to remove a trustee, he could do so only "by notifying such Trustee . . . by written instrument signed and acknowledged by the Donor." Paul was never provided written notice of his purported removal as trustee, nor was there ever an attempt to deliver the 2018 and 2019 instruments to him.[4]

_____

[3] The trust defined "Trustee" to mean "the single, multiple and successor Trustees who at any time may be appointed and acting hereunder in a fiduciary capacity." Violetta does not contest that delivery to "the Trustee" under Bruce's method meant delivery to both trustees.

[4] Violetta argues that despite the lack of delivery, Paul still had constructive knowledge of these events under section 736.0104(1)(c)'s definition of knowledge. But this argument ignores the plain language of the trust, which required delivery to—not simply knowledge by—a trustee. And even if a trustee's knowledge was sufficient, Violetta did not satisfy her burden on summary judgment to prove Paul's knowledge.

Paul testified that he had no knowledge of the challenged amendments; that he continued to have access to the online portal for the trust account despite the amendments; that he accessed the portal every few months to view the account portfolio and performance records; but that he "usually wouldn't look at the statements" when viewing the online account. In response, Violetta presented bank statements that identified Bruce—and not Bruce and Paul—as the trustee, along with her

Even more, Bruce expressed his method for amendment in the conjunctive. His method required a written, signed, notarized instrument "and" delivery to the trustee during Bruce's lifetime. We must give effect to this term in determining Bruce's intent, and it shows that delivery to the trustee was not optional. *See Summitbridge Credit Invs. III, LLC v. Carlyle Beach, LLC*, 218 So. 3d 486, 489 (Fla. 4th DCA 2017) (explaining that construing a contract as a whole "includes giving effect to conjunctions used in phrases"); *Buie v. Bluebird Landing Owner's Ass'n*, 172 So. 3d 519, 521 (Fla. 1st DCA 2015) (" 'And' is conjunctive and means that both conditions apply."); *see also DecisionHR, Inc. v. Mills*, 341 So. 3d 448, 457 (Fla. 2d DCA 2022) (holding that a rule written in the conjunctive requires that all stated factors be satisfied); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012) (discussing conjunctive/disjunctive canon).

We acknowledge that section 736.0602(3)(a) requires "substantial" (not "strict") compliance with the method a settlor prescribes for

---

speculation that Paul could have seen these statements when viewing the online account and could have surmised from them that Bruce had amended the trust. This speculation—which Paul's testimony directly refuted—was legally insufficient to create a genuine dispute as to whether Paul had reason to know of the purported trust amendments. *See In re Amends. to Fla. R. Civ. P. 1.510*, 309 So. 3d 192, 193 (Fla. 2020) ("[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))); *Carter v. Blue House Painting & Remodeling, LLC*, 367 So. 3d 618, 620 (Fla. 2d DCA 2023) ("[A] party opposing summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts.' " (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

7

amendment of her or his trust. But given the emphasis Bruce's trust instrument placed on having two trustees, we conclude that delivery to only one of them did not substantially comply with the method Bruce prescribed for amendment of his trust.

A trustee, unlike a notary, is not an outside observer whose involvement in amending or revoking a trust could be viewed as merely technical. The trustees here had certain rights and responsibilities, had to act by unanimous consent, and any instrument purporting to alter or revoke the trust had to be delivered to both of them during Bruce's lifetime. Because delivery of the purported amendatory instruments to Paul was never made or even attempted, substantial compliance with the method Bruce prescribed is lacking.[5] *See* Restatement (Third) of Trusts § 63 cmt. i (Am. Law Inst. 2003) (discussing substantial compliance and explaining that "if a settlor reserves the power to revoke the trust 'only by a notice in writing delivered to the trustee,' revocation requires the delivery of such a notice to the trustee[, but] [i]t is sufficient delivery . . . if the notice is mailed to the trustee by the settlor even though it is not received by the trustee until after the settlor's death").

We therefore affirm the final judgment invaliding the 2018 restatement and 2019 amendments to the trust. We have carefully

_____

[5] We recognize that Bruce ultimately had the power to revoke or amend his trust as he saw fit and that his intent is the polestar that must guide the outcome here. Violetta contends that the 2018 and 2019 instruments clearly reflect Bruce's intent to remove Paul as trustee and name her as the primary beneficiary and that any conclusion to the contrary undermines Bruce's intent. But the method Bruce established to amend or revoke his trust is unambiguous, and Bruce's "intent as expressed therein controls and th[is] court cannot rely on extrinsic evidence" to hold otherwise. *Vigliani,* 189 So. 3d at 219. Bruce intended for any amendment to be delivered to both trustees, and the lack of delivery to Paul was, at bottom, what undermined Bruce's intent.

reviewed all of Violetta's other arguments and find them insufficient to support reversal, so we affirm on all remaining issues without comment.

Affirmed.

LaROSE and ATKINSON, JJ., Concur.

_____

Opinion subject to revision prior to official publication.