Soft Line, S.p.A. v. Italian Homes, LLC, 2015 NCBC 6.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 9429

SOFT LINE, S.p.A., Individually, and
in the Right of and for the Benefit of
SOFT LINE CALIA AMERICA, LLC,

   Plaintiffs,

  v.

ITALIAN HOMES, LLC; CALIA
TRADE, S.p.A.; VINCENT
SCOCUZZA; GIUSEPPE CALIA; and
ANGELO CALCULLI,

   Defendants,

  and

SOFT LINE CALIA AMERICA, LLC,

   Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER**

{1}  THIS MATTER is before the Court on Defendants' Motion for Summary Judgment ("Motion"), made pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)").  For the reasons expressed below, the Motion is GRANTED in part and RESERVED IN PART, pending discovery.

> *Womble Carlyle Sandridge & Rice, LLP by Jason C. Hicks, Mark N. Poovey, and Jonathan Reich for Plaintiffs.*

> *Nexsen Pruet, PLLC by Gary L. Beaver, Christine L. Myatt, and Catherine B. Lane for Defendants.*

Gale, Chief Judge.

## I. INTRODUCTION

{2}  This dispute arises out of a joint venture between Plaintiff Soft Line, S.p.A. ("Soft Line") and Defendant Calia Trade S.p.A. ("Calia Trade") organized as

Soft Line Calia America, LLC ("SLCA"). After approximately two years of operation, Soft Line and Calia Trade elected to dissolve the joint venture, as it had failed to make a profit. Plaintiff contends that SLCA's financial failures are attributable to Defendants' fraudulent statements, waste of corporate assets, and breach of fiduciary duty through self-dealing. Plaintiff also complains that Defendants breached their fiduciary duties in winding up SLCA, by making preferential payments to themselves and Calia-affiliated companies and by forming another North Carolina limited liability company as, essentially, a successor-in-interest to SLCA, but excluding Plaintiff. They contend these actions constitute a breach of fiduciary duty coupled with an improper personal benefit. Defendants have disclaimed any misconduct and raise multiple defenses. The subject of the present Motion is limited to whether the statute of limitations has run on Plaintiff's claims.

{3}     The Motion is made in advance of any significant discovery. Defendants urge that granting the Motion, in whole or part, will promote judicial efficiency by narrowing the scope of claims on which discovery must be taken. However, the Court notes that the discovery relevant to the claims for civil conspiracy, unjust enrichment, fraud, and unfair and deceptive trade practices ("UDTP") is also relevant to the constructive fraud claim, which, as discussed below, is not time-barred. Additionally, fact issues remain as to whether or not the statute of limitations bars claims under the continuing wrong doctrine. The Court then grants the Motion in part, but concludes that some parts of the Motion would be better considered after further discovery.

## II.     FACTUAL BACKGROUND

{4}     The Court does not make findings of fact when ruling on a motion for summary judgment. *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 164–65 (1975). However, to provide context for the Court's ruling, it is appropriate for the Court to outline the following facts, which are either undisputed or construed in Plaintiff's favor.

## A. The Parties

{5}     Plaintiff Soft Line is an Italian furniture manufacturer that sells upholstered furniture worldwide, including in the United States.  Soft Line is organized as a *societa per azioni*, which is the Italian equivalent of a corporation. Soft Line's principal place of business is in Bari, Italy.  Modesto Scagliusi, a nonparty, is the president of Soft Line.

{6}     Defendant Calia Trade, formerly Calia Trade SRL, is an Italian furniture manufacturer that sells leather upholstered furniture and regularly does business in North Carolina.  Calia Trade is part of a larger group of companies ("the Calia-affilated companies") that Defendants Calia and Calculli control.

{7}     Before it dissolved in February 2009, SLCA was a North Carolina limited liability company with its principal office in Greensboro, North Carolina. SLCA was a joint venture between Calia Trade and Soft Line, organized in 2006 to gain a stronger foothold in the American furniture market.  Calia Trade and Soft Line each held a fifty-percent (50%) ownership interest in SLCA.

{8}     Defendant Italian Homes, LLC ("Italian Homes") is a North Carolina limited liability company with its principal place of business in High Point, North Carolina.  Italian Homes was formed approximately one month before SLCA dissolved in 2009.

{9}     Defendant Vincent Scocuzza resides and works in High Point, North Carolina.  Before serving as manager for SLCA, Scocuzza worked for the Calia-affiliated companies.  Scocuzza is presently a manager of Italian Homes.

{10}    Defendant Angelo Calculli primarily resides in Italy and has not yet been served with the Complaint in this case.[1]

{11}    Defendant Giuseppe Calia resides in Italy, but travels to and does business in Guilford County, North Carolina, the Calia-affiliated companies' agent.

{12}    Scocuzza, Calculli, and Calia, occasionally referred to as "the Individual Defendants," are all managers of Italian Homes.

---

[1] There is a separate motion regarding such service that this Order does not address.

## B. Institution of the Lawsuit

{13}    Plaintiff initiated this action on October 16, 2013, bringing derivative and individual claims for breach of fiduciary duty, UDTP, civil conspiracy, accounting, breach of contract, unjust enrichment, declaratory judgment, waste of corporate assets, fraud in the inducement, constructive fraud, and constructive trust.  The matter was designated a mandatory complex business case on November 12, 2013, and assigned to the undersigned on November 20, 2013.

{14}    At argument on Defendants' Motions to Dismiss, Plaintiff voluntarily dismissed its breach of contract claim.

{15}    On May 30, 2014, based on the applicable statutes of limitations, Defendants moved for summary judgment on Plaintiff's claims for breach of fiduciary duty, UDTP, civil conspiracy, unjust enrichment, waste of corporate assets, fraud in the inducement, constructive fraud, and constructive trust.  The Motion has been fully briefed; the Court has heard oral argument; and the Motion is ripe for disposition.

## C. SLCA's Formation and Operation

{16}    Beginning in 2006, Soft Line and Calia Trade began negotiations to create a joint venture to sell leather upholstered furniture in the United States.  Scagliusi negotiated on behalf of Soft Line; and Calia negotiated on behalf of Calia Trade. Under the joint venture plan, Soft Line and Calia Trade would each own fifty percent of SLCA and Foshan Shunde Divextra Furniture Co., Ltd. ("Divextra").[2] SLCA had three managers: Roberto Romano, Soft Line's former CEO (now deceased); Angelo Calculli, associated with Calia Trade; and Vincent Scocuzza, also associated with Calia Trade.  Scocuzza was the only on-site manager for SLCA in Greensboro, North Carolina.[3]

---

[2] Soft Line owned a direct twenty-percent interest in Divextra and an indirect thirty-percent interest through SLCA.

[3] The parties disagree as to the nature and degree of Scocuzza's authority as a manager and the extent to which he should be charged with the alleged breaches of fiduciary duty involving control of SLCA finances.

{17}     Plaintiff alleges that the Individual Defendants and Calia Trade conspired to mismanage corporate assets, solicit loans or capital contributions from Soft Line for SLCA, and sell joint-venture assets below cost to a Calia-affiliated company, Manifattura Italiana Divani S.p.A. ("MID").  Moreover, Defendants allegedly made false reports to Soft Line regarding Divextra to induce Soft Line to make additional investments in or lend to SLCA.

### D. Post-SLCA

{18}     Once it became apparent that SLCA would not be profitable for either Soft Line or Calia Trade, the owners agreed to dissolve the joint venture and that an independent accountant would perform a final accounting.  Plaintiff contends that because Defendants controlled the financial and accounting documents, they were responsible for conducting the final accounting but failed to do so.  Plaintiff also contends that in dissolution, the Individual Defendants made preferential payments to Calia-affiliated companies rather than to Soft Line.

{19}     On January 30, 2009, around the time SLCA was formally dissolved, Scocuzza formally founded Italian Homes.  Plaintiff contends that Defendants built Italian Homes on SLCA's "assets, goodwill, and business opportunities," essentially as a successor-in-interest to SLCA.  (Compl. ¶ 118.)

{20}     Six months later, Romano, representing Soft Line, filed a complaint with the Carabinieri, an Italian police force and court ("Carabinieri Complaint"),[4] in which he alleged, *inter alia*, the following: (1) in August and September of 2008, Defendants' agent sent Soft Line financial reports for SLCA and Divextra which showed that SLCA was operating at a profit of $324,321.29 and Divextra was operating at a loss of $386,130.97 (Carabinieri Compl. 3–4); (2) based on this information, Soft Line and Calia Trade decided to equally contribute another $2 million to Divextra (Carabinieri Compl. 4); (3) Soft Line made these contributions, but Calia never did (Carabinieri Compl. 4); (4) three months after the original

---

[4] The Carabinieri Complaint is attached as Exhibit Q to Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment.

financial report, Defendants' agent sent an updated statement which showed that SLCA had incurred a $940,946.51 loss and that Divextra was in over $4 million of debt (Carabinieri Compl. 5); (5) Soft Line repeatedly asked Defendants to explain the disparity between the two reports, to no avail (Carabinieri Compl. 5); (6) other financial statements conflicted such that one set showed that MID owed Divextra $604,431 and a subsequent set showed that Divextra owed MID $373,006 (Carabinieri Compl. 6–7); and (7) though Divextra was supposed to sell furniture to MID at a 10% mark-up, Defendants instructed Divextra to sell to MID at below cost (Carabinieri Compl. 6).  Plaintiff makes the same allegations in its Complaint, filed more than four years later in the present action.  (*Compare* Compl. ¶¶ 57–58, 67–72, 78 *with* Carabinieri Compl. 3–6.)

## III.  <u>STANDARD OF REVIEW</u>

{21}    Summary judgment is proper when the evidentiary record shows that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law.  N.C. R. Civ. P. 56(c); *Andresen v. Progress Energy, Inc.*, 204 N.C. App. 182, 184, 696 S.E.2d 159, 160–61 (2010).  In ruling on a summary judgment motion, the trial court must consider the evidence in the light most favorable to the nonmovant.  *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 662, 488 S.E.2d 215, 221 (1997).

## IV.  ANALYSIS

### A. <u>As Pleaded, Plaintiff's Claims for Breach of Fiduciary Duty, Constructive Fraud, and Constructive Trust Are Governed by a Longer Limitations Period and Survive the Present Motion</u>

{22}    To succeed on a breach of fiduciary duty claim, a plaintiff must show that (1) a fiduciary relationship exists from which fiduciary duties arise; (2) the fiduciary duty was breached; and (3) the breach proximately caused the plaintiff's injury.  *BDM Invs. v. Lenhil, Inc.*, 2014 NCBC LEXIS 6, at *23 (N.C Super. Ct. Mar. 20, 2014) (citing *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013)).  A claim for constructive fraud lies where (1) a relationship of trust and confidence

exists, (2) the defendant takes advantage of that position of trust to benefit himself, and (3) the plaintiff was consequently injured. *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004). In cases where an individual obtains legal title to property in violation of a fiduciary duty he owes to another, a constructive trust arises. *Day v. Rasmussen*, 177 N.C. App. 759, 762, 629 S.E.2d 912, 914 (2006).

{23}    Typically, breaches of fiduciary duty are governed by the three-year statute of limitations contained in section 1-52(1). *Marzec v. Nye*, 203 N.C. App. 88, 93, 690 S.E.2d 537, 541 (2010) (citing *Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 (2005)). "However, a claim of constructive fraud based upon a breach of fiduciary duty falls under the ten-year statute of limitations contained in N.C. Gen. Stat. § 1-56." *Babb v. Graham*, 190 N.C. App. 463, 480, 660 S.E.2d 626, 637 (2008) (quoting *Toomer*, 171 N.C. App. at 67, 614 S.E.2d at 335 (internal quotations and alterations omitted)). A claim for a constructive trust based on a constructive fraud claim is also governed by the ten-year statute of limitations. *Bowen v. Darden*, 241 N.C. 11, 17, 84 S.E.2d 289, 294 (1954).

{24}    Here, Plaintiff asserts that Defendants breached their fiduciary duties, taking SLCA's property to benefit themselves and Calia-affiliated companies to SLCA's detriment. Assuming Plaintiff can ultimately prove each element of constructive fraud, as presently pleaded, its fiduciary duty and constructive trust claims are those to which a ten-year statute of limitations applies and are, therefore, not time barred.[5]

---

[5] The present Motion does not address, and the Court does not presently express an opinion as to whether Plaintiff can bring those claims directly as well as derivatively.

**B. Plaintiff's Claims for Civil Conspiracy, Unjust Enrichment, Fraud in the Inducement, and Unfair and Deceptive Trade Practices Are not Time-Barred if Plaintiff Ultimately Develops a Record to Support Application of the Continuing Wrong Doctrine**

{25} Plaintiff's claims for civil conspiracy, unjust enrichment, and fraud in the inducement each have a three-year limitations period. N.C. Gen. Stat. § 1-52(1), (4), (9) (2014). A fraud claim does not begin to accrue until discovery of the fraud. N.C. Gen. Stat. § 1-52(9). A UDTP claim has a four-year limitations period. N.C. Gen. Stat. § 75-16.2 (2014). Defendants argue that the events giving rise to each of these claims occurred and were known to Plaintiff more than four years ago, making them time barred. Among other arguments, Defendants assert that the Carabinieri Complaint, filed well outside the limitations period, makes abundantly clear that Plaintiff was on notice of its various claims, even if not aware of each specific fact Plaintiff would now seek to prove.

{26} As to the fraud claims, Plaintiff invokes the discovery rule and contends that it did not discover much of the conduct until recently. As to other claims, Plaintiff contends that the causes of action either rest on acts occurring within the limitations period, or alternatively, are based on ongoing wrongs supporting application of the continuing wrong doctrine which tolls the running of the limitations period.

{27} For instance, Plaintiff contends that, after dissolution and within the limitations period, Defendants made preferential payments to Italian Homes and MID, two Calia-affiliated companies. (Vincent Scocuzza's Resps. Pl.'s First Set Interrogs. ("Scocuzza Interrogs. Resps.") Nos. 7, 8.) Plaintiff also urges that Defendants failed to disclose the existence of and mismanaged (1) an Australian lawsuit against SLCA, pending from 2010 to 2012 and (2) an IRS tax levy against the joint venture arising in 2013.[6] These facts arguably assert new claims that did not arise prior to 2010 and are inside the limitations period.

---

[6] The Court makes no determination whether post-dissolution omissions regarding the Australian lawsuit and the IRS tax levy amount to fraud. However, viewing facts in the light most favorable to

{28}    However, the facts alleged in the 2009 Carabinieri Complaint occurred outside of the limitations period, and claims based on them are time-barred unless the continuing wrong doctrine tolls the limitations period. "A party having notice must exercise ordinary care to ascertain the facts, and if he fail [sic] to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired, had he made the necessary effort to learn the truth of the matters affecting his interests." *Blankenship v. English*, 222 N.C. 91, 92, 21 S.E.2d 891, 892 (1942), *quoted in Vail v. Vail*, 233 N.C. 109, 116, 63 S.E.2d 202, 207 (1951); *see also Pembee Mfg. Corp. v. Cape Fear Const. Co.*, 313 N.C. 488, 493, 329 S.E.2d 350, 354 (1985).

{29}    Under the continuing wrong doctrine, the statute of limitations does not begin to run until the unlawful act ceases. *Marzec*, 203 N.C. App. at 94, 690 S.E.2d at 542. The continuing wrong doctrine is not easily invoked. For the continuing wrong doctrine to apply, Soft Line must show that Defendants continuously committed unlawful acts, not merely that there were continual ill effects from an original unlawful act. *Id.* The doctrine has been said to arise from "separate obligations stemming from the same essential . . . legal obligation," *Eubank v. Van Riel*, No. COA11-1088, 2012 N.C. App. LEXIS 727, at *20 (N.C. Ct. App. June 19, 2012), rather than from "a discrete occurrence," *Stratton v. Royal Bank of Can.*, 211 N.C. App. 78, 87, 712 S.E.2d 221, 229 (2011).

{30}    Importantly, this Motion is presented at the preliminary pleadings stage. Genuine issues of fact remain as to the continuing wrong doctrine's application. Moreover, the disputed facts necessary to resolve the competing arguments on the continuing wrong doctrine's application overlap with those required to determine whether Plaintiff has stated a constructive fraud claim with a longer limitations period, such that ruling on the Motion as to the continuing wrong doctrine would not promote judicial efficiency. Considering the currently limited

Plaintiff, this could amount to a concealment of material fact which was reasonably calculated to, intended to, and did actually deceive Plaintiff and resulted in injury to Plaintiff. *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974).

factual record in the light most favorable to Plaintiff, the Court allows the claims to proceed into discovery. In so doing, it does not presently rule on the limitations questions or foreclose subsequently revisiting those issues by the undersigned, or if necessary, another superior court judge, as discovery advances.

{31} However, the Court believes it is appropriate to rule on a more limited issue and now rejects Plaintiff's arguments that Defendants are equitably estopped from asserting the statute of limitations as a defense or that the limitations period is otherwise equitably tolled because Plaintiff sought justice in Italy prior to filing in North Carolina. Equitable tolling does not save present claims that are also alleged in the Carabinieri Complaint because the Carabinieri Complaint expressly states that Soft Line reserves the right "to bring a civil action to the established criminal proceedings," (Carabinieri Compl. 8), indicating that Plaintiff understood the Carabinieri Complaint did not create a civil suit and that it would have to take additional measures to bring a civil action. Equitable estoppel is not appropriate because it requires, *inter alia*, that a party asserting the defense have "(1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice." *Stratton*, 211 N.C. App. at 88, 712 S.E.2d at 230 (internal citations omitted).

{32} There is no actionable allegation that Plaintiff relied on any of Defendants' representations or omissions to its detriment or in refraining from filing a civil action. In sum, the Court will not entertain an assertion of equitable estoppel or equitable tolling, other than the doctrine of continuing wrong, to defeat an otherwise valid defense based on the statute of limitations. Stated otherwise, as to the claims for civil conspiracy, unjust enrichment, fraud, and UDTP, Plaintiff will survive the limitations defense, only if (1) the continuing wrong doctrine tolls the statute of limitations for claims based on acts that occurred outside the limitations period or (2) the claims first arose because of conduct that occurred within the limitations period.

### C. Plaintiff's Claim for Corporate Waste Is Dismissed

{33} North Carolina does not recognize corporate waste as an independent cause of action. *Green v. Condra*, 2009 NCBC LEXIS 20, at *29 (N.C. Super. Ct. Aug. 14, 2009). Rather, Plaintiff's claim for corporate waste is subsumed in its breach of fiduciary duty claim. *McKee v. James*, 2013 NCBC LEXIS 33, at *41 (N.C. Super. Ct. July 24, 2013). Accordingly, that claim is DISMISSED.

## V. CONCLUSION

{34} For the foregoing reasons, Plaintiff's claim for corporate waste is DISMISSED. As to all other claims, ruling on Defendants' Motion for Summary Judgment is DEFERRED pending a subsequent determination on a fuller evidentiary record.

IT IS SO ORDERED, this the 16th day of January, 2015.